Harmon WHITTINGTON, Charles F. Reed and W. Paul Edman, d/b/a Mid-Century Oil & Gas Company and A. B. Dow

v.

Garvis I. BAZEMORE, C. T. Ruffin and Goodwyn H. Harris, Jr.

Civ. A. No. 4948.

United States District Court
W. D. Louisiana, Shreveport Division.

July 11, 1955.

W. M. Phillips, and W. S. Waller, Shreveport, La., for plaintiffs.

Gordon B. Golsan, Jr., Mansfield, La., Craig, Magee & Spann, Mansfield, La., for defendants.

DAWKINS, Chief Judge.

Brought here under the Diversity Statute[1], the action is for recognition of plaintiffs as the lawful owners of a certain oil, gas and mineral lease, and for a declaration of the nullity of another lease granted by the same lessor to others at a later date.

The facts are not in dispute, and are conceded by all parties to be as follows:

On October 27, 1941, Keatchie Investment Corporation, a Louisiana corporation (called Keatchie), was the owner of the entire, undivided fee simple title to:

The Southeast Quarter of the Northeast Quarter and the Northeast Quarter of the Southeast Quarter of Section 32, Township 14 North, Range 15 West, less that portion lying west of the Keatchie-Logansport State Highway, there being excepted 33 acres, more or less. Also the North Half of the Southwest Quarter of Section 33, Township 14 North, Range 15 West, containing in all 127 acres, more or less, DeSoto Parish, Louisiana.

On that date Keatchie sold the property to Garvis I. Bazemore, one of the defendants, but reserved from the sale an undivided one-half interest in the minerals.

On May 1, 1947, for a cash bonus of $317, Bazemore granted an oil, gas and mineral lease to Robertson Stores, Inc., an Arkansas corporation, covering the entire property, with no mention being made of the outstanding mineral interest reserved by Keatchie. On a standard printed form, the lease was for a primary term of ten years, and contained the usual warranty clause, reading:

"Lessor hereby warrants and agrees to defend the title to said land and agrees that lessee at its option may discharge any tax, mortgage or other lien upon said land and in event lessee does so, it shall be subrogated to such lien with the right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of lessee's rights under the warranty in event of failure of title, it is agreed that

---

1. 28 U.S.C.A. § 1332. Plaintiffs are citizens of Texas and defendants of Louisiana.

if lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid lessor shall be reduced proportionately."

Annual rentals, in lieu of development, were stipulated in the sum of $127, being $1 per acre per year, the Bank of Grand Cane, in DeSoto Parish, Louisiana, being designated as depository. For brevity, this lease hereinafter will be called the "Bazemore-Robertson Stores" lease.

Previously, on March 11, 1947, Keatchie had executed an oil, gas and mineral lease covering its unexpired one-half mineral interest in the property, in favor of T. E. Robertson, a citizen of Arkansas. The connection, if any, between him and Robertson Stores, Inc., is not shown. For brevity, this lease hereinafter will be called the "Keatchie-Robertson" lease. It likewise was for a primary term of ten years, was on a printed form identical to the Bazemore-Robertson Stores lease, and provided for the same annual rentals in lieu of development.

No drilling or other development under either of these leases has been effected to this date. Delay rentals, however, have been paid as described *infra*.

Between May 1, 1947, and April 16, 1951, the Bazemore-Robertson Stores lease was assigned in its entirety, by mesne conveyances, a number of times with no express mention being made in any of the assignments of the then outstanding mineral interest held by Keatchie. However, each such assignment also conveyed to each such assignee, together with other leases in DeSoto Parish, the Keatchie-Robertson lease.

On April 16, 1951, Robertson Oil Company, Inc., the then owner of the Bazemore-Robertson Stores lease, assigned it to W. Paul Edman, one of the plaintiffs here, who subsequently acknowledged his joint ownership of it with the other plaintiffs. This assignment described the interest conveyed as follows:

"* * * All of its right, title and interest in and to all of the following described oil, gas and mineral leases covering lands situated in DeSoto Parish, Louisiana, to wit:
* * *
"10. Lease executed by Garvis I. Bazemore in favor of Robertson Stores, Inc., dated May 1st, 1947, recorded under Registry Number 186618, Conveyance Records of DeSoto Parish, Louisiana, which covers and affects an undivided one-half interest in * * *" the 127 acres involved.

It will be noted particularly at this point, for it relates to one of the key contentions made by defendants, that on April 16, 1951, Keatchie's undivided one-half mineral interest still was *in* force and did not expire for non-user until October 27, 1951, ten years after it had been reserved.

On or before May 1, 1948, 1949 and 1950, the due dates of annual delay rentals under the Bazemore-Robertson Stores lease, rental payments in the sum of $63.50 each were deposited by the owners of the lease, and were accepted by Bazemore without protest, apparently because he recognized that the lease authorized reduction in rental payments according to true legal ownership, and he then owned only an undivided one-half interest in the minerals. Despite the fact that Keatchie's undivided one-half mineral interest did not expire for non-user until October 27, 1951, on or before May 1st of that year Edman and his co-owners, evidently anticipating expiration of Keatchie's interest, deposited $127 as delay rentals; and the same amounts were deposited timely each year thereafter through 1954, four payments thus being made in that manner. Bazemore accepted and retained these payments without protest.

On February 5, 1955, Bazemore executed an oil, gas and mineral lease, purporting to cover an undivided one-half mineral interest in this property, in favor of C. T. Ruffin and Goodwyn H. Harris, Jr. A short time later, on February 28, 1955, Edman and his co-owners filed this suit against Bazemore, Ruffin and Harris.

The suit alleges the basic facts outlined above and contends that since the Bazemore-Robertson Stores lease, which plaintiffs now own, covered and warranted without restriction the entirety of the mineral ownership of the property, and even though Bazemore then owned only an undivided one-half mineral interest, upon expiration of Keatchie's undivided one-half mineral interest on October 27, 1951, and its consequent reversion at that time to Bazemore, their lease then covered, automatically by operation of law, the entire mineral estate. This resulted, they say, from the principle of "after acquired title", which had the immediate effect of transferring to their lease all of the property it covered. Accordingly, they claim entitlement legally to be recognized as owners of a valid, subsisting lease covering the entire mineral interest in the property, and to a decree declaring the lease executed by Bazemore on February 5, 1955, utterly null, void and of no effect.

Defendants, for their part, have moved to dismiss for failure to state a claim upon which relief can be granted, and for summary judgment. Since the greater includes the lesser, and the parties have stipulated that we may consider as undisputed all of the facts outlined above, we shall treat the matter as if presented only for summary judgment.

Defendants concede that plaintiffs own a valid, subsisting lease covering the undivided one-half mineral interest held by Bazemore when he granted the lease to Robertson Stores, Inc., on May 1, 1947; but dispute applicability of the "after acquired title" doctrine and contend that, by virtue of the wording of the assignment from Robertson Oil Company, Inc., to Edman, on April 16, 1951, all that was conveyed, and hence all that was acquired by Edman and his co-owners, was a lease

covering an undivided one-half mineral interest.

■■ The questions presented for decision, therefore, are these:

1.) Does the principle of "after acquired title" apply to oil, gas and mineral leases in Louisiana? and,

2.) If so, did plaintiffs acquire, by the assignment from Robertson Oil Company, Inc., to Edman, a lease covering the entirety of the mineral interests, or only one-half of such interests?

After careful study of the applicable Louisiana authorities, we are convinced that both of these questions must be resolved in favor of plaintiffs:

As early as 1928, the Louisiana Supreme Court applied the principle of "after acquired title", fundamental in ordinary real estate conveyances [2], to a mineral lease [3]. In the Neal case, the Court said [166 La. 799, 118 So. 25]:

"Ordinarily, where one sells the property of another—and the rule is equally applicable to the *granting* or sale of mineral leases—and later acquires title to the property sold by him, the title vests immediately in his vendee. Bonin v. Eyssaline, 12 Mart.,O.S., 185, 227; McGuire v. Amelung, 12 Mart.,O.S., 649; Woods v. Kimbal, 5 Mart.,N.S., 246, 247; Fenn v. Rils, 9 La. 95, 100; Stokes v. Shakleford [Shackleford], 12 La. 170; Lee v. Ferguson, 5 La. Ann. 532; New Orleans v. Riddell, 113 La. 1051, 37 So. 966; Wolff [Wolf] v. Carter, 131 La. 667, 60 So. 52; Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605." (Emphasis supplied.)

This principle was reaffirmed in 1942 in White v. Hodges; 201 La. 1, 9 So.2d 433 [4].

2. Lum Chow v. Board of Commissioners for Lafourche Levee District, 203 La. 268, 13 So.2d 857, and authorities therein cited. See also Brady v. Falgout, D.C., 42 F.Supp. 532; Angichiodo v. Cerami, D.C., 35 F.Supp. 359, affirmed 5 Cir., 127 F.2d 848.

3. St. Landry Oil & Gas Co. v. Neal, 166 La. 799, 118 So. 24.

4. See also Gayoso Co., Inc., v. Arkansas Natural Gas Corporation, 176 La. 333, 145 So. 677, where the Louisiana Supreme Court upheld a lease granted by the surface owner approximately eight-

Defendants rely principally upon Gulf Refining Company v. Orr, 207 La. 915, 22 So.2d 269; McDonald v. Richard, 203 La. 155, 13 So.2d 712; McMurrey v. Gray, 216 La. 904, 45 So.2d 73; Liberty Farms, Inc., v. Miller, 216 La. 1023, 45 So.2d 610; and Hicks v. Clark, 225 La. 133, 72 So.2d 322, but those cases are not in point. They stand simply for the now well established general proposition that:

"* * * 'One may not reserve reversionary rights to minerals when he is not the owner of the minerals at the time the reservation is made. *It is settled that, in such instances, the reservation is ineffective and the outstanding mineral interests revert to the person owning the land at the time prescription accrues.'*

\* \* \* \* \* \*

*"We consider the reservation of the reversionary interest in this case as an effort to circumvent the public policy of this state, and we therefore refuse to recognize or give effect to it. * * *"* Hicks v. Clark, 225 La. 133, 72 So.2d 322, 324, 325. (Emphasis supplied.)

▮ Here, the person who owned the land when Keatchie's mineral interest reverted to it, on October 27, 1951, was Bazemore, who, by executing the lease to Robertson Stores, Inc., on May 1, 1947, had warranted unconditionally [5] that he then owned all of the minerals. He is bound by that warranty, to which plaintiffs became fully subrogated through their chain of title to this lease [6].

▮ When Bazemore executed the lease, covering the entire mineral interest, with a primary term extending well beyond the expected existence of the mineral servitude held by Keatchie, there arose a conclusive presumption of intention on his part that when Keatchie's interest prescribed, the lessee or its assigns then would hold a lease covering the full mineral interest in the property.

Defendants cite a number of Louisiana cases [7] holding generally that where a buyer has notice of a defect in the title at the time he acquires it, he is precluded from asserting a claim in warranty. That undoubtedly is true, but not applicable here because the "defect" was not absolute. It was only relative, subject to being cured by the "after acquired title" doctrine, and actually was cured.

Horn v. Skelly Oil Company, 224 La. 709, 70 So.2d 657, 661, also cited and relied on by defendants, does not support —indeed, in some respects it actually refutes—their position. That case held that a *former* owner of land, against which there was an outstanding undivided one-half mineral interest that by the terms of his deed he had the right to lease (a mandate coupled with an interest) "* * * could grant no lease affecting this half interest * * * that would extend the [outstanding]

een months before reversion of a reserved mineral interest occurred in his favor, he being the owner of the land when reversion took place.

5. Even in the absence of an express warranty there is an implied warranty. LSA–Civil Code, Article 2501: "Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale." This rule applies also to mineral leases. Tomlinson v. Thurmon, 189 La. 959, 181 So. 458.

6. LSA–Civil Code, Article 2503: "The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty.

"*But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others.*" (Emphasis supplied.)

7. Byrne v. Ortte, La.App., 33 So.2d 209; Harang v. Blanc, 34 La.Ann. 638; Werk v. Leland University, 155 La. 971, 99 So. 716; Tennent v. Caffery, 170 La. 680, 129 So. 128; Squier v. Stockton, 6 La. Ann. 32.

servitude beyond the [ten-year] prescriptive period, in the absence of production within that time"; and that the person who owned the land when the outstanding mineral interest prescribed then became the owner of such interest by reversion, free of the lease executed by the *former* owner. Here, as already noted, Bazemore was the owner of the land when Keatchie's interest prescribed and reverted to it. Having previously granted an unrestricted lease, covering *all* of the minerals, upon reversion of Keatchie's interest his warranty immediately ripened the lease into one covering *all* of the minerals.

■ Defendants' second point, that plaintiffs acquired, through the Robertson Oil Company, Inc., assignment to Edman, a lease covering *only* an undivided one-half mineral interest, in our judgment is no better taken than their first contention. The assignment to Edman was of "*all* of its right, title and interest" in the lease, which included the right to have it cover the "after acquired" interest Bazemore received by operation of law from Keatchie on October 27, 1951. It is true the assignment stated that the lease "* * * *covers and affects* an undivided one-half interest in * * *" the property, but those verbs were couched in the present tense, i. e., *at that time* the lease covered only an undivided one-half interest, for on April 16, 1951, the date of the assignment, Keatchie's interest still had approximately six months to run. That language does not limit the assignment, as defendants urge, to an undivided one-half interest. It is merely descriptive of a current status. Read as a whole, the assignment clearly conveyed *all* of the

assignor's rights, which included subrogation to the warranty made by Bazemore that effected coverage of the full mineral interest. Moreover, he himself must have recognized this for he accepted rental payments for a one-half interest until 1951, when Keatchie's interest prescribed, and thereafter for the whole interest, all without protest.

United Gas Public Service Company v. Mitchell, 188 La. 651, 177 So. 697, 698, cited and relied on by defendants, is of no help to their position. There the assignment from Norton, the original lessee, to United was of expressly described acreage. It was held that a "catch-all" clause, covering " '* * * all land owned or claimed by lessors contiguous to or forming a part of the land * * * ' ", which was in the lease but not in the assignment, would not affect the rights of third parties. Here we have no such "vague and indefinite", 177 So. 700, description. The Bazemore-Robertson Stores lease, and the assignment from Robertson Oil Company, Inc., to Edman, accurately described the property, and the full lease covering it, in clear, unambiguous language. This gave unmistakable notice to third parties, including Ruffin and Harris, that plaintiffs owned a valid lease covering all mineral interests in the property.

For these reasons, defendants' motions must be and are hereby overruled and denied.

The case is not now in posture, however, for judgment to be rendered in favor of plaintiffs, for they have not moved for judgment. Upon their filing a motion for summary judgment, and its submission, it will be granted.