## J. R. BUTLER

### v.

### Garvis I. BAZEMORE, C. T. Ruffin, and Goodwyn H. Harris, Jr.

### Civ. A. No. 6617.

United States District Court
W. D. Louisiana,
Shreveport Division.

Sept. 24, 1960.

---

W. M. Phillips, and Marlin Risinger, Jr., Phillips, Risinger & Kennedy, Shreveport, La., for plaintiff.

Gordon B. Golsan, Jr., Howard E. Spann, Craig, Magee & Spann, Mansfield, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This action, brought under the Diversity Statute,[1] is the successor to the case of Whittington v. Bazemore, 133 F. Supp. 163, decided by this Court on July 11, 1955, and reversed by the Fifth Circuit Court of Appeals, 245 F.2d 943, on July 31, 1957. It is advisable to reiterate the facts of that case, the holdings of both Courts, and the subsequent happenings giving rise to this action.

On October 27, 1941, Keatchie Investment Corporation, a Louisiana corporation (called Keatchie), owned the undivided fee simple title to:

> The Southwest Quarter of the Northeast Quarter and the Northeast Quarter of the Southeast Quarter of Section 32, Township 14 North, Range 15 West, less that portion lying west of the Keatchie-Logansport State Highway, there being excepted 33 acres, more or less. Also the North Half of the Southwest Quarter of Section 33, Township 14 North, Range 15 West, containing in all 127 acres, more or less, DeSoto Parish, Louisiana.

On that date, Keatchie sold this property to Garvis I. Bazemore, reserving an undivided one-half interest in the minerals.

Bazemore executed an oil, gas and mineral lease to Robertson Stores on May 1, 1947, covering this entire property, for a ten-year term. The lease contained the usual warranty clause but made no mention of the outstanding mineral interest in favor of Keatchie. Delay rentals were stipulated in the sum of $127, being $1 per acre, and the lessee had the right to reduce the rentals proportionately if the lessor should be found to own less than the entire fee simple estate. This lease is hereinafter called the Bazemore-Robertson Stores lease.

Previously, on March 11, 1947, Keatchie had executed an oil, gas and mineral lease covering its unexpired one-half mineral interest in this property, in favor of T. E. Robertson, a citizen of Arkansas, who took the lease on behalf of Robertson Stores. This lease likewise

1. 28 U.S.C.A. § 1332. Plaintiff is a citizen of Texas and defendants are citizens of Louisiana.

was for a ten-year term, contained the same warranty clause and provided for the same delay rentals as the Bazemore-Robertson Stores lease. This lease will be called the Keatchie-Robertson lease.

Between May 1, 1947, and April 16, 1951, the Keatchie-Robertson lease and the Bazemore-Robertson Stores lease were assigned, with proper recordation, in the following manner:

(1) On October 11, 1947, Robertson Stores, Inc., assigned, or more properly, sub-leased, both leases to Sugar Field Oil Company with no mention of warranty. Assignor reserved a 3/64 of 7/8 overriding royalty on all gas and oil produced.

(2) On May 16, 1948, Robertson Stores, Inc., assigned "all right, title and interest" in both leases to Dorothy Alley with no mention of warranty.

(3) On June 4, 1948, Sugar Field reconveyed "all of its right, title and interest" in both leases to Robertson Stores, Inc., with no mention of warranty.

(4) On June 11, 1948, Dorothy Alley reassigned "all rights, title and interest" in both leases to Robertson Stores, Inc., with no mention of warranty.

(5) On June 20, 1948, Earle Johnson conveyed to Potter Oils, Inc., a 1/64 of 7/8 overriding royalty in both leases.

(6) On June 21, 1948, Robertson Stores, Inc., conveyed to Earle Johnson a 1/16 of 7/8 overriding royalty interest in both leases.

(7) On August 17, 1948, Johnson conveyed to John Collins a 1/128 of 7/8 overriding royalty in both leases.

(8) On August 26, 1948, Robertson Stores, Inc., and Earle Johnson conveyed to Potter Oils, Inc., both leases, with express warranty of title.

(9) On August 28, 1948, John Collins conveyed to Potter Oils, Inc., the 1/128 of 7/8 overriding royalty in both leases received from Johnson on August 17, 1948.

(10) On September 3, 1948, Potter Oils, Inc., conveyed to Louis Blendermann an undivided one-half interest in both leases, with full and express warranty of title.

(11) On May 5, 1949, Potter Oils, Inc., conveyed "all of its right title and interest" in both leases, with express exclusion of warranty, to Robertson Oil Co., Inc. The connection between Robertson Stores and Robertson Oil Co. is not shown by the record.

(12) On April 10, 1951, Blendermann "conveyed and quitclaimed without any warranty whatsoever" to Robertson Oil Co., Inc., "all of his right, title and interest" in both leases.

On April 16, 1951, Robertson Oil Company, Inc., owner of the Bazemore-Robertson Stores lease, assigned it to W. Paul Edman, one of the plaintiffs in the case of Whittington v. Bazemore, supra. Edman subsequently acknowledged his joint ownership with the other plaintiffs in that suit. The deed to Edman conveyed " * * * all of its right, title and interest in and to all of the following described oil, gas and mineral leases covering lands situated in DeSoto Parish, Louisiana, to wit:

" * * * 10. Lease executed by Garvis I. Bazemore in favor of Robertson Stores, Inc., dated May 1st, 1947, recorded under Registry Number 186618, Conveyance Records of DeSoto Parish, Louisiana, which covers and affects an undivided one-half interest in * * * " the 127 acres involved.

The undivided one-half interest in the minerals reserved by Keatchie expired for non-user on October 27, 1951, ten years after it had been reserved.

Delay rentals were paid to Bazemore by the owners of the Bazemore-Robertson Stores lease for 1948, 1949 and 1950 in the sum of $63.50. Bazemore did not protest about this lesser sum apparently because he recognized that the lease authorized a reduction according to the true legal ownership of the minerals. On or before May 1, 1951, Edman and his co-owners deposited $127 in the depository bank named in the lease, evidently anticipating that the outstanding one-half mineral interest held by Keat-

chie would revert to Bazemore on October 27, 1951, for non-user. The same amount was deposited each year thereafter through 1954, and Bazemore accepted these payments without protest.

On February 5, 1955, Bazemore executed an oil and gas lease in favor of C. T. Ruffin and Goodwyn H. Harris, purporting to cover an undivided one-half mineral interest in the above-described property. Suit was filed by Edman and his co-owners, doing business as Mid-Century Oil & Gas Company, on February 28, 1955, against Bazemore, Ruffin and Harris, contending that the Bazemore-Robertson Stores lease, which they owned, covered and warranted without restriction the entire mineral interest in the property, and when the outstanding Keatchie one-half mineral interest expired for non-user it automatically reverted to Bazemore, which *eo instante* vested the interest in them under their lease by virtue of the doctrine of "after-acquired title."

This Court held in that case that the Bazemore-Robertson Stores lease covered the entire mineral interest; that a conclusive presumption of intention on Bazemore's part arose so that when Keatchie's interest prescribed, the lessee or its assigns would then hold a lease covering the entire mineral interest in the property. This resulted, we said, because Bazemore had unconditionally warranted that he owned all the minerals to which warranty the plaintiffs had become subrogated through their chain of title. When the outstanding mineral interest reverted to Bazemore on October 27, 1951, the Bazemore-Robertson Stores lease immediately and automatically covered the full mineral interest by operation of the principle of "after-acquired title."

The Fifth Circuit Court of Appeals, relying on certain language in Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225, which was clearly distinguishable on its facts, reversed our decision, and held that the assignment by Robertson Oil to Edman and his co-owners was a mere quitclaim which under Louisiana law is insufficient to support an after-acquired title. Two of the three Judges agreed with this Court's interpretation of the Bazemore-Robertson Stores lease but the Court was unanimous in ruling that the Bazemore-Robertson Stores lease, owned by the Edman group, did not cover the undivided one-half mineral interest that expired on October 27, 1951. The end result of that decision was that the Edman group owned a lease covering an undivided one-half mineral interest which was quitclaimed to them by Robertson Stores but their lease did not cover the one-half mineral interest that expired on October 27, 1951.

Subsequent to that decision, on November 6, 1957, Robertson Oil Company, Inc., executed, with full warranty, an assignment to the present plaintiff, J. R. Butler, of the Bazemore-Robertson Stores lease insofar as it purports to cover and affect the undivided one-half mineral interest that had been outstanding in Keatchie, and which the Court of Appeals held not to have passed to Edman and his co-owners.

Previously, on July 10, 1956, Mid-Century Oil & Gas Company completed a producing well, begun on June 6, 1956, on a unit in Section 32, which includes the lands covered by the Bazemore-Robertson Stores lease. All costs of this well were paid by Mid-Century.

Delay rentals, in the sum of $127 per year, were deposited by the Edman group (Mid-Century Oil & Gas Company) on or before May 1, in 1955 and 1956. Bazemore, in his answer to a request for admissions propounded by Butler, admitted that the rental payment for 1955 was deposited in his bank account, but that he instructed the bank not to accept it or any other payments which paid more than was due under the lease which he explained was one-half of the total sum. Further, he did not recall receiving a deposit slip for the rental deposit for 1956, and he assumed that the bank complied with his instructions. However, it was stipulated by the parties that L. Allison Smith, President and Cashier of the

depository bank, if called upon, would testify that the deposit slip was mailed to Bazemore and that he did not recall any instructions from Bazemore pertaining to the delay rentals. Further, that he could not find any instructions or notations to that effect in the bank records.

This suit was filed by Butler against Bazemore, Ruffin and Harris on December 2, 1957, asking to be declared owner of the lease covering the one-half mineral interest formerly owned by Keatchie and to have declared null and void the oil and gas lease which is claimed to be owned by Ruffin and Harris.

Subsequent to the filing of this action, the following instruments were executed and recorded in DeSoto Parish, Louisiana:

On February 5, 1958, Dorothy Alley executed an authentic act declaring that the reassignment by her to Robertson Stores, Inc., on June 11, 1948, of the Bazemore-Robertson Stores lease was only for the business purpose of revesting the record title in Robertson Stores, "where the equitable title had always been, as, while the same was in her name, it was the true owner thereof."

On February 6, 1948, Tom Potter executed an authentic act declaring that the non-warranted assignment by Potter Oils, Inc., of "all right, title and interest" in the Bazemore-Robertson Stores lease was intended to convey all rights and actions of warranty to the assignee against all former proprietors of the property conveyed, "including all rights in or that might thereafter accrue to said lease by virtue of the reversion to, or reinvestiture in, the Lessor under said lease * * *."

On February 24, 1958, Louis C. Blendermann executed an authentic act declaring that his non-warranted quitclaim of April 10, 1951, to Robertson Oil Company, Inc., of the Bazemore-Robertson Stores lease was intended to convey the same title to the assignee that Blendermann had received from Potter Oils, Inc., on September 3, 1948, "including all rights in or that might thereafter accrue to said lease by virtue of the reversion

to, or reinvestiture in, the lessor under said lease of any mineral interests and ownerships outstanding at the time of the execution of said lease * * *."

The complaint alleges the basic facts outlined above and contends that Bazemore v. Whittington held that when the mineral servitude owned by Keatchie prescribed, the lease to Robertson Oil covered the whole of the mineral interest, and because Robertson Oil only quitclaimed the lease as to one-half of the minerals, the lease as to the other one-half vested in Robertson Oil, plaintiff's assignor. Plaintiff contends that the reason the Court of Appeals held that Edman did not get the lease of all the minerals was because his assignment was executed without warranty. He argues that every assignment in his chain of title is made with warranty except the assignments from Robertson Stores to Dorothy Alley; from Alley back to Robertson Stores; from Blendermann to Potter Oils; and from Potter Oils to Robertson Oil Company, Inc. Plaintiff points to the authentic acts executed by Tom Potter, Louis Blendermann and Dorothy Alley, after the institution of this suit, as sufficient to give him a full warranted title.

Plaintiff further contends that the Bazemore-Robertson Stores lease, covering the entirety of the mineral interests, is in full force and effect because every obligation of the lessee has been complied with, from proper payment of rentals to drilling, production and payment of royalties. In this connection, plaintiff has interposed a plea of estoppel against defendants to deny the validity of the lease on the whole of the minerals executed by Bazemore to Robertson Stores. The basis for this plea is that Bazemore has accepted the full delay rentals and royalties from the producing well.

Defendants contend that Robertson Oil Company did not have a lease of any mineral interest to assign to Butler, having quitclaimed all of its interest in the lease to Edman on April 16, 1951. They deny that the outstanding Keatchie mineral servitude came under the terms of the lease executed in favor of Robertson

Stores by virtue of the principle of after-acquired title, because they say that after-acquired title can only operate in favor of a vendee against his vendor, and at the time the servitude prescribed Robertson Stores occupied no position of contractual relationship with Bazemore, having previously quitclaimed all of its interest to Edman. Further, the defendants contend that if Robertson Oil Company, Inc., had any interest in the lease, it was not kept in force and effect by payment or deposit of any delay rentals, the only rentals being paid by Mid-Century Oil & Gas Company, who has been judicially decreed not to own the mineral interest in controversy.

Finally defendants answer the plea of estoppel by denying its applicability to the factual situation here presented. They contend that a plea of estoppel is not valid unless action or non-action by the person against whom it is pleaded has misled or damaged the person pleading it.

This suit is the inevitable result of the ultimate decision by the Fifth Circuit Court of Appeals in Bazemore v. Whittington, supra. The classification by that Court of the conveyance to Edman by Robertson Oil Company, Inc., as a mere quitclaim, ignoring the provisions of the Louisiana Civil Code that warranty of title always is implied unless expressly excluded (LSA–C.C. Arts. 2501, 2502, and 2503), and the provisions of Art. 2503 that the buyer is subrogated to the seller's rights and actions in warranty against all others, even where warranty is expressly excluded, has caused considerable perplexity among the Louisiana Bar, and to this Court. It has been criticized as being contrary to the previously settled Louisiana law.[2] Our task now is to determine:

(1) Whether Robertson Oil Company, Inc., had any lease interest to assign to the plaintiff, having quitclaimed all of its interest in the Bazemore-Robertson Stores lease prior to the reversion of the one-half mineral interest in contest to its grantor; and,

(2) If so, is the lease now in full force and effect.

■ Although able and experienced counsel for the litigants, and this Court, have diligently searched the Louisiana jurisprudence, no decision in point has been found. The question is *res nova.* In the absence of a determinant precedent in the law of the State in which the federal Court is sitting, it has the duty to look to general law. Fair v. U. S., 5 Cir., 234 F.2d 288. So far as possible it must attempt to reach the same result as the courts of the State would reach had the matter been presented to such courts originally Jackson v. Flohr, 227 F.2d 607, certiorari denied 350 U.S. 947, 76 S.Ct. 322, 100 L.Ed. 826; Big State Barging Co. v. Calmes, D.C., 138 F.Supp. 891; Mayronne Mud & Chemical Co. v. T. W. Drilling Co., D.C., 168 F.Supp. 800.

The nature of this problem dictates that we apply principles of equity in order to reach a fair and just result. In doing so, we are guided by the Louisiana law applicable to mineral leases.

■ After carefully weighing the merits of this claim with the view of achieving an equitable result, we are of the opinion that plaintiff's demands must be rejected. Simply stated, when Robertson Oil Company, Inc., quitclaimed its lease interest to Edman on April 16, 1951, and the outstanding mineral servitude prescribed on October 27, 1951, Robertson Oil Company, Inc., had no lease, or any other interest in the land or minerals, to which the reversionary interest could attach as the result of the after-acquired title doctrine. Since the Court of Appeals has classified the conveyance to Edman as a quitclaim, the reversionary interest could not pass through Robertson Oil to Edman, and Robertson Oil no longer had any interest in the lease because it had quitclaimed and fully disposed of all of its right, title and interest therein.

Plaintiff relies primarily upon Waterman v. Tidewater Associated Oil Company, supra, wherein the Louisiana Supreme Court held that after-acquired

2. Cf. 18 Louisiana Law Review 312, 320.

title does not inure to the benefit of a grantee who has only a quitclaim deed, and that the grantor is not precluded from acquiring a later title though it may be adverse to the grantee holding under the quitclaim deed. That case held only that *if* the grantor later *acquires* title it does not pass to the grantee holding under a quitclaim deed. It does not hold that an assignor of a mineral lease, after having quitclaimed and fully disposed of his lease, can subsequently receive the benefit of reversion of a mineral interest to the lessor.

■ Plaintiff also contends that this Court held that the reversion of the mineral interest ripened the Bazemore-Robertson Stores lease into a lease of the whole and that the lessee then acquired the full lease. This holding, they say, was affirmed by the Fifth Circuit Court of Appeals but the decision was reversed because the Court of Appeals termed the assignment a quitclaim deed which is insufficient to support after-acquired title. Our holding was that when Bazemore executed the lease covering the entire mineral interest there arose a conclusive presumption that when Keatchie's mineral interest prescribed, the lessee or its assigns would hold a lease covering the full mineral interest. But, as noted, when the reversion occurred, the lessee, Robertson Oil Company, Inc., had disposed of all of its interest in the lease. Had Robertson Oil Company, Inc., retained the lease, it would have covered the full mineral interest upon the reversion of the outstanding mineral servitude to Bazemore. It did not have *any* interest in the lease when that event occurred, and, therefore, the lease did not ripen into one covering the full mineral interest.

This is not a case of dividing an indivisible contract of lease, as plaintiff contends. At the time it was executed, because of the outstanding one-half mineral interest held by Keatchie, the lease actually was enforceable only as to an undivided one-half interest in the minerals, but was subject to ripening into a lease covering the entirety of the minerals, when the Keatchie servitude prescribed. To hold that Robertson Oil Company, Inc., did not at first receive a full lease from Bazemore does not constitute dividing the lease itself; it is only a determination of the enforceable interest actually held under the lease when it was first executed.

■ Plaintiff's final argument is that Bazemore is estopped to deny the validity and effectiveness of the lease of the full mineral interest by having accepted the full delay rentals provided by the lease agreement and the royalty payments due from the producing well. As to plaintiff, this plea is not valid. Under settled principles of estoppel, the party pleading it must have been misled to his injury by acts of omission or commission by the party who is sought to be estopped.[3] Butler bought a lease from Robertson Oil covering an undivided one-half mineral interest after the original case had been decided. Until then his assignor had made no claim whatever to the lease although Keatchie's interest reverted to Bazemore in 1951, and more than six years thus had passed. Butler embarked on this venture with his eyes wide open, knowing full well that the validity of his lease depended upon whether Robertson Oil had a lease to sell. He did not rely on anything that the defendants said or did, or failed to do; rather, he simply took a gamble that the suit he obviously planned to institute against defendants would be successful. There is not the least showing that Butler was injured because of anything the defendants did or failed to do. Butler gambled that Robertson Oil had a lease to sell, and he has lost. His position cannot be sustained

3. See Slaton v. King, 214 La. 89, 36 So.2d 648; Wadley v. Gleason, 192 La. 1052, 190 So. 127; Tyler v. Walt, 184 La. 659, 167 So. 182; Succession of Butterworth, 195 La. 115, 196 So. 39; Selber Bros. v. Newstadt's Shoe Stores, 203 La. 316, 14 So.2d 10.

See also Broussard v. Phillips Petroleum Company, D.C., 160 F.Supp. 905, and authorities cited therein, affirmed sub nom. Phillips Petroleum Company v. Broussard, 5 Cir., 265 F.2d 221.

by any estoppel on the part of defendants to deny the validity of the lease he hoped he had obtained.

Counsel for both plaintiff and defendants have argued in brief the admissibility or non-admissibility of the authentic acts executed by Dorothy Alley, Tom Potter and Louis C. Blendermann. These instruments were executed after this suit was instituted for the purpose of acknowledging that their non-warranted transfers to Robertson Oil of the Bazemore-Robertson Stores lease were intended to include all rights in the lease that they had acquired from their assignors, which included all rights of warranty and any rights or interests that may accrue to the lease by reversion.

We are convinced that these documents are inadmissible under the well-settled principle set forth in Smith v. Bell, 224 La. 1, 68 So.2d 737, 739:

" 'It is the well-settled and unbroken rule of law in this state that, in the absence of any allegation of fraud or error, conditions, and stipulations beyond those expressed in an authentic act, and what may have been said before, or at the time of, or since the execution thereof, can be proven only by means of a counter-letter or by the use of interrogatories on facts and articles.' Franton v. Rusca, 187 La. 578, 175 So. 66, 68, and Lawrence v. Claiborne, 215 La. 785, 41 So.2d 680, and authorities cited in both cases."

The defendants Ruffin and Harris, being third parties not privy to the transactions between Robertson Oil, Edman and Butler, were entitled to rely on the public records as they found them when Ruffin and Harris were granted the lease covering one-half of the minerals by Bazemore. At that time, according to the holding of the Court of Appeals, the records showed that the chain of title from Robertson Oil to Edman and his associates was void of warranty and was in fact only a quitclaim deed. Under Louisiana law,[4] Ruffin and Harris were entitled to rely upon the record title.

Having decided that Robertson Oil had no lease interest to sell to plaintiff, Butler, we do not reach the second question of whether the purported lease is now in full force and effect.

For these reasons, plaintiff's claim must be rejected and judgment will be entered for defendants.

4. " * * * Matters outside of the recorded deed, and not of record, cannot be pleaded against third persons, nor does mere knowledge, not obtained from the records, where it exists, of the right of the record owner to sell, constitute such fraud as cuts down everything." Hughes v. Morissey, 169 La. 176, 124 So. 772, 774, citing McDuffie v. Walker, 125 La. 152, 51 So. 100; Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528; Cole v. Richmond, 156 La. 262, 100 So. 419; Schwing Lumber & Shingle Co. v. Arkansas Nat. Gas Co., 166 La. 201, 116 So. 851.