J. R. BUTLER, Appellant,

v.

Garvis I. BAZEMORE, C. T. Ruffin and Goodwyn H. Harris, Jr., Appellees.

No. 18732.

United States Court of Appeals Fifth Circuit.

May 9, 1962.

11. See Fed.R.Civ.P. 56(c). See also Fed.R.Civ.P. 12(c), 28 U.S.C.A.

Marlin Risinger, Jr., Shreveport, La., for appellant.

Gordon B. Golsam, Jr., Howard E. Spann, Mansfield, La., for appellees.

Before TUTTLE, Chief Judge, and HUTCHESON, RIVES, CAMERON, JONES, BROWN, WISDOM, GEWIN, and BELL, Circuit Judges, en Banc.

WISDOM, Circuit Judge.

This action, as the court below observed, "is the inevitable result" of Baze-more v. Whittington, 5 Cir., 1957, 245 F. 2d 943.

██ A Louisiana landowner executed a lease purporting to cover the full mineral interest. At the time, the land was burdened with a mineral servitude covering one-half of the oil and gas interest. During the term of the lease and while the lessor owned the land, the servitude was extinguished by liberative prescription. The question at issue, here and in Bazemore v. Whittington, is whether the interest represented by the prescribed servitude inures to the benefit of the lessee and his assigns. We hold that it does. Unless a seller or assignor expressly reserves warranty (or reserves it by casting the instrument in the form of a quitclaim deed, in accordance with the intention of the parties that the deed take effect only as a quitclaim) every sale or lease in Louisiana carries an implied warranty. The key instrument here carried an implied warranty. Because of this warranty and the doctrine of after-acquired title, we hold that the interest represented by the prescribed mineral servitude returned to the lessor-landowner but inured to the benefit of the lessee and his assigns by perfecting the lessee's title to the full oil and gas interest described in the original lease.

At stake in this litigation is an undivided one-half mineral interest in 127 acres of land in De Soto Parish, Louisiana, the same interest at stake in Bazemore v. Whittington. That decision was based partly on a misunderstanding of the important principle of implied warranty under Louisiana law.[1] Unless the effect of that misunderstanding is corrected, our earlier holding may unsettle innumerable titles in Louisiana. After restudying the questions of law these two inextricably entangled suits raise,

---

1. Commentators are unanimous in their view that the Court erred: See Daggett, Discussion Notes, 4 Oil and Gas Reporter 1522, 1528 (1955), 5 O. & G. R. 525 and 7 O. & G. R. 797 (1957); Carter, Comment, Mineral Rights and After-Aquired Title, 18 La.Rev. 312, 319– 21 (1958); Thurman, The Year's Decisions in Mineral Law: Federal Cases, 6th Ann.Inst. on Minn.L.(L.S.U.) 126, 134–143 (1958). See also Stephens, Review of Federal [Mineral Law] Cases, 8th Ann.Inst. on Minn.L.(L.S.U.) 154, 157 (1961).

the Court en banc feels compelled to overrule Bazemore v. Whittington to the extent that it conflicts with this decision.

## I.

■■ There is no disagreement over the facts. Originally, Keatchie Investment Corporation owned the land and the minerals. October 27, 1941, Keatchie sold the land to Garvis I. Bazemore, reserving an undivided one-half interest in the minerals. This reservation created a mineral servitude. Under the doctrine of liberative prescription, a servitude prescribes in ten years for non-use, the mineral interest reverting to whoever owns the land; more correctly, the land is freed from the burden of the servitude.[2]

May 1, 1947, Bazemore executed a ten-year oil and gas lease to T. E. Robertson (for the benefit of Robertson Stores) covering the entire mineral interest. The lease did not mention the outstanding undivided half-interest in the minerals Keatchie had reserved nor did it refer to the possibility of that interest inuring to the benefit of the lessee through liberative prescription of Keatchie's servitude. There was no reason why it should, however, for Robertson Stores, two months before, on March 11, 1947, had taken a lease from Keatchie covering the reserved one-half mineral interest. Both leases were on an identical standard form (Bath's Spec. 14–BR–1) in common use in north Louisiana. The form contains an express warranty of title by the lessor, which is a special warranty in addition to the usual warranty of possession.[3] The form also stipulates that without impairment of rights under the warranty, the lessee may reduce delay rentals ($127, a dollar an acre) proportionately, if the lessor should own less than the full fee simple title. On May 1, 1947, because of having these two leases, Robertson Stores owned the entire mineral interest, one-half of which was subject to divestiture by liberative prescription in favor of Bazemore, the landowner.

April 16, 1951, after a series of assignments,[4] the Bazemore-Robertson lease was assigned to Robertson Oil Company. On the same date Robertson Oil Company assigned the lease to Edman, Whittington, and Reed, doing business as the Mid-Century Oil and Gas Company, and Dow. (These assignees are referred to collectively as Edman).

■■ October 27, 1951, the Keatchie servitude prescribed for non-use. Anticipating that the Keatchie interest would return to Bazemore and inure to him as lessee, on May 1, 1951, Edman increased the delay rental payments from $63.50,

2. In Frost-Johnson Lumber Co. v. Salling's Heirs, 1920, 150 La. 756, 91 So. 207 the Louisiana Supreme Court established the principle that oil and gas were insusceptible of private ownership until reduced to possession. Hence, a conveyance of mineral rights created only a servitude, the right to explore and reduce any minerals to possession. "A right to servitude is extinguished by the non-usage of the same during ten years." Art. 789, LSA–Civil Code of 1870. "The rights of usufruct, use and habitation and servitudes are lost by non-use for ten years." Art. 3546, LSA–Civil Code of 1870. See discussion and cases cited in Long-Bell Petroleum Company v. Tritico, 1949, 216 La. 426, 43 So.2d 782, 791; Hodges v. Long-Bell Petroleum Co., 1960, 240 La. 198, 121 So.2d 831; Long-Bell Lumber Co. v. Granger, 1953, 222 La. 670, 63 So. 2d 420; Long-Bell Petroleum Co. v. Tritico, 1949, 216 La. 426, 43 So.2d 782.

3. The warranty reads: "Lessor hereby warrants and agrees to defend the title to said land and agrees that lessee at its option may discharge any tax, mortgage or other lien upon said land and in event lessee does so, it shall be subrogated to such lien with the right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of lessee's rights under the warranty in event of failure of title, it is agreed that if lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid lessor shall be reduced proportionately."

4. The various assignments are traced in this Court's earlier opinion in Bazemore v. Whittington, 5 Cir., 245 F.2d 943, 945, n. 7; in the lower court's opinion in this case, 187 F.Supp. 458; and in Whittington v. Bazemore, D.C., 133 F.Supp. 163.

which he had been paying, to the full $127 annual rental.[5] Bazemore accepted these payments for four years. Notwithstanding, February 5, 1955, Bazemore executed an oil and gas lease in favor of C. T. Ruffin and Goodwyn H. Harris, purporting to cover an undivided one-half mineral interest (Keatchie's prescribed interest). Within a month Edman filed suit against Bazemore, Ruffin, and Harris, contending that the return of mineral interest to Bazemore, through the doctrine of after-acquired title,[6] perfected his title to a lease of entire mineral interest.

## II.

The key instrument is the Robertson Oil Company's assignment of the Bazemore-Robertson lease to Edman. This assignment, without express warranty, conveyed:

"All of its right, title and interest in and to all of the following described oil, gas and mineral leases covering lands situated in DeSoto Parish, Louisiana, to-wit: * * *" [There follows a description carefully limiting the description to the Bazemore-Robertson Stores lease] "10. Lease executed by Garvis I. Bazemore in favor of Robertson Stores, Inc., dated May 1st, 1947, recorded under Registry Number 186618, conveyance Records of DeSoto Parish, Louisiana, which covers and affects an undivided one-half interest in [metes and bounds enumerated] the 127 acres involved."[7]

The district court held that when Keatchie's servitude prescribed, the lessee, or its assigns, had a perfected lease for the entire mineral interest in the property. The holding rests on two grounds: (1) the implied warranty of title, carrying with it any after-acquired title, and (2) Edman's subrogation to this warranty through his chain of title. This holding was reversed on appeal. The Court agreed with the district judge that the doctrine of after-acquired title applied, and that therefore the first lessee, Robertson received the Keatchie mineral interest when it returned to the landowner, but we held that the assignment by Robertson to Edman was a mere quit-

---

5. See footnote 3. The stipulation for a proportionate reduction in rentals is what the law would require anyway. Articles 2701, 2492. See, however, Calhoun v. Gulf Refining Co., 1958, 235 La. 494, 104 So.2d 547.

6. Under the doctrine of after-acquired title, when a vendor sells property he does not own, but later acquires title to such property, his acquisition inures to the benefit of the vendee. St. Landry Oil & Gas Co. v. Neal, 1928, 166 La. 799, 118 So. 24; Wolf v. Carter, 1912, 131 La. 667, 60 So. 52; Wells v. Blackman, 1908, 121 La. 394, 46 So. 437; Comment 15 Tul. L.Rev. 115 (1940). The doctrine's function is to enforce the vendor's warranty against eviction. A lessor or assignor warrants the lessee or assignee against eviction. See Martel v. Hunt, 1940, 195 La. 701, 197 So. 402; Cooke v. Gulf Refining Co., 1914, 135 La. 609, 612, 65 So. 2d 758, 761; Rives v. Gulf Refining Co., 1913, 133 La. 178, 182, 62 So. 623, 627; Tomlinson v. Thurmon, 1938, 189 La. 959, 181 So. 458; Lockwood Oil Co. v. Atkins, 1925, 158 La. 610, 613, 104 So. 386, 388. Louisiana courts have therefore held that the doctrine of after-acquired title applies to mineral sales and leases. St. Landry Oil & Gas Co. v. Neal, 1928, 166 La. 799, 118 So. 24; Jackson v. United Gas Public Service Co., 1940, 196 La. 1, 198 So. 633; Gayoso Co. v. Arkansas Natural Gas Corp., 1933, 176 La. 333, 145 So. 677. In the Gayoso the landowner executed an oil and gas lease when, as in the instant case, there was an outstanding mineral servitude. The court held that when the servitude prescribed the interest it represented passed to the lessee through the lessor-landowner by after-acquired title. See Carter, Mineral Rights and After-Acquired Title, 18 La.L.Rev. 312 (1958); Comment, 23 Tul.L.Rev. 533 (1949); Comment, 15 Tul.L.Rev. 533; Note, 13 La.L.Rev. 610 (1953).

7. The district court construed the phrase *"which covers and affects an undivided one half interest in the lease"* as describing merely the present state of the title and concluded that the assignment covered a lease of the whole, not half. Bazemore v. Whittington, 5 Cir., 1957, 245 F.2d 943, 946. On appeal, a majority of this Court agreed with the district court's construction. 245 F.2d 943, 946. That point is not at issue here.

claim deed (not carrying a warranty) which, under Louisiana law, will not support an after-acquired title.[8]

Apparently, Robertson Oil Company interpreted the opinion as holding that the original lease covered the prescribed Keatchie mineral interest and that this half interest passed to Robertson but was not included in the "quit-claim" assignment from Robertson Oil Company to Edman. November 6, 1957, Robertson Oil Company assigned the interest to the present plaintiff, J. R. Butler, with full warranty. Previously, on July 10, 1956, Edman completed a producing well on a unit including the land covered by the Bazemore-Robertson lease. After obtaining his assignment from Robertson, Butler managed to obtain, for curative purposes, declarations from all of the assignees in his chain of title that in each instance they intended to convey all their rights and actions of warranty against all former owners, including all rights in any reversion of the mineral interest to the lessor.

██ December 2, 1957, Butler filed suit against Bazemore, Ruffin, and Harris, asking to be declared owner of the lease covering the one-half mineral interest formerly owned by Keatchie and asking also that the Ruffin and Harris oil and gas lease be declared null and void. The trial judge, Judge Ben C. Dawkins, was also the trial judge in Bazemore v. Whittington. He was fully aware of this Court's holding that the original lease covered the outstanding Keatchie one-half mineral estate and that Robertson Oil Company had executed only a quit-claim assignment to Edman. He construed our opinion as *not* holding that Robertson Oil had any interest in the lease. Accordingly, Judge Dawkins ruled that Robertson Oil, having assigned all of its interests in the lease to Edman, had no interest left to assign to Butler; Edman, as assignee, was entitled to assert whatever right his assignor had to the full mineral interest under the lease containing the original warranty. This opinion is consistent with Louisiana holdings that a quitclaim may be effective as a conveyance of a present interest.[9] The district court found that Butler's attempts to cure his title defects were ineffective; that the curative instruments were not admissible[10] and, in any event, were executed after the rights vested in Edman. Butler had interposed pleas of estoppel. Judge Dawkins properly dismissed this plea on the ground that Butler was not misled to his prejudice by any act of the lessor's; he simply took a gamble on the chance that Bazemore v. Whittington had the effect of recognizing Robertson Oil's ownership of the disputed interest.

### III.

In the earlier decision, Bazemore v. Whittington, this Court followed Louisiana law in holding that a quitclaim deed will not support after-acquired title to a reversion of a mineral interest to

---

8. The opinion states: "The assignment, without express warranties, in terms of 'all of its right, title and interest' [133 F.Supp. 165.] indicates a purpose to convey what it then owned * * * and not a purpose to convey that which was not then owned but which *might* thereafter accrue." 245 F.2d at 947. And, "we are unanimous in the view that it amounted to nothing more than a quitclaim deed which the Supreme Court of Louisiana plainly holds, Waterman v. Tidewater Associated Oil Company, 213 La. 588, 35 So.2d 225, as do other jurisdictions * * * will not here support after-acquired title." 245 F.2d at 950.

9. Although a quitclaim deed does not convey the property itself, it effectively transfers the vendor's title and interest at the time of the execution of the deed. Waterman v. Tidewater, 1947, 213 La. 588, 604, 35 So.2d 225, 231.

10. In a second opinion, 138 F.Supp. 324 (1956), the district court held that Articles 2236 and 2276 of the LSA–Civil Code of 1870 prohibited the introduction of such parole evidence and that the plaintiffs were third persons entitled to rely on the public records. See McDuffie v. Walker, 1909, 125 La. 152, 51 So. 100; Smith v. Bell, 1953, 224 La. 1, 68 So.2d 737.

the lessor-landowner.[11] Waterman v. Tidewater Associated Oil Co., 1948, 213 La. 588, 35 So.2d 225. The error in Bazemore v. Whittington lies in a misreading of certain language in Waterman, as a result of which this Court held that the assignment from Robertson to Edman of "all [the assignor's] right, title and interest", *without express warranty*, constituted a quitclaim deed.[12]

One of the important distinctions between the civil law and the common law is that in the civil law, in the absence of an express stipulation to the contrary, there is an implied warranty of peaceable possession in every sale, while in the common law the absence of such a warranty keeps breath in the maxim *caveat emptor*.[13] The Louisiana Civil Code provides that warranty against eviction [14] is implied in every sale or lease unless warranty is expressly excluded. Article 2501, LSA–Civ. Code of 1870, states:

> "Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale."

This and other warranty articles are applicable to conveyances of mineral interests. Thus, the Louisiana Supreme Court has held squarely that an assignment of mineral rights, *without express warran-* ty, and in terms of "all rights, title and interest", constitutes an assignment *with* warranty; it "is immaterial that the act of sale of the lease by defendants to plaintiff does not contain an express warranty clause, as warranty against eviction is implied under Article 2501 of the Civil Code". Tomlinson v. Thurmon, 1938, 189 La. 959, 181 So. 458. See also Lockwood Oil Company v. Atkins, 1925, 158 La. 610, 104 So. 386.

The doctrine of after-acquired title applies only to a vendee holding by a warranty deed.[15] This is the reasoning behind the doctrine: "It is easy to see why one, who sells with warranty, becomes estopped from thereafter acquiring a title to the prejudice of his grantee. To hold that the title he acquires inures to his grantee is really nothing more than an enforcement of the grantor's obligation to deliver a good title. * * * On the other hand, it is quite manifest that the doctrine of after-acquired title should not be expanded to include a quit-claim deed, primarily for the reason that a conveyance of that character transfers only the present interest of the vendor in the land and does not convey the property. * * * This being so, there is no reason why the vendor should not thereafter acquire title even though it be adverse to the vendee holding under the deed." Waterman v. Tidewater Associated Oil Co., 1947, 213 La. 588, 35 So.2d 225, 233–234. See Gordy, The Legal Effect of Quitclaim Deeds in Louisiana, 23 Tul.L. Rev. 533 (1949). The predicate for the decision in this case, therefore, is the aft-

11. See footnote 6. There is force, however, in the suggestion that even a quitclaim deed *should* support after-acquired title, if the parties intended the deed to act as a conveyance of title and not primarily as a release of the vendor's claim to the property. Such a view would agree with Louisiana principles of warranty. See Comment, 23 Tul.L.Rev. 533 (1949); Carter, Comment, Mineral Rights and After-Acquired Title, 18 Tul.L.Rev. 312, n. 3 (1958). The notion of a quitclaim deed developed in the common law when, historically, its function was to release any interest the vendor had in the property; acquisition of title was incidental. 16 Am. Jur. § 18.

12. See footnote 8.

13. Boudreaux, Comment: Warranty against Eviction in the Civil Law, 23 Tul.L.Rev. 154 (1948); Ralston, Comment: "Warranty of Title" or Warranty of Peaceable Possession in Louisiana.

14. Article 2500 reads: "Eviction is the loss suffered by the buyer of the totality of the thing sold, or of a part thereof, occasioned by the right or claims of a third person.

15. See footnote 6.

er-acquired title under the lease executed by Bazemore to Robertson, although the decision turns on the effect of the Robertson-Edman assignment. The after-acquired title was that of Bazemore's, not of Robertson's.

Waterman v. Tidewater Associated Oil Company, 1947, 213 La. 588, 35 So.2d 225, on which this Court relied in Bazemore v. Whittington, was a petitory action. The plaintiff's author in title, Rose, had acquired the land in question from Rectangle Ranch by a deed reciting that the vendor "remised, released, sold, conveyed, and quitclaimed, and by these presents does remise, release, sell, convey, and quitclaim * * * all the right, title, interest, claim and demand which said [vendor] has in and to the following described piece of land". The word "quitclaim" is italicized in the opinion. The terms "quitclaim", "remise", and "release" are the formal words traditionally used in a common law quitclaim or release. In contrast, in the Robertson Oil-Edman assignment, Robertson Oil "bargained, sold, transferred, assigned and conveyed and by these presents does bargain, sell, transfer, assign and convey * * * all of * * * [its] right, title and interest". This is the usual language of a granting clause of a Louisiana conveyance or assignment indisputably carrying an implied warranty.[16] The terms "quitclaim", "remise", and "release" are conspicuous by their absence from the Robertson-Edman assignment.

■ The Louisiana Supreme Court had no trouble classifying Rectangle's assignment. "In determining whether a deed is a quitclaim or not, reference must be made to the language used therein for the purpose of ascertaining the intention of the parties. * * * Here * * * the recitals are clear and show merely a transfer of the interest of Rectangle in two townships and do not con-

vey any property." "Obviously", the court said, "the declarations do not convey the land but only the right, title and interest in the land". If an instrument is a quitclaim deed, by definition there is no warranty since such a conveyance transfers only such interest as the vendor has. Lack of an express warranty, however, does not in itself make an instrument a quitclaim deed since in Louisiana a warranty is implied.

The Louisiana Supreme Court's construction of the Rectangle-Rose deed compelled the court to go to the deeds from Rose's ancestors in title. On examining the transfer from Rectangle's grantor, Buck, the court found another non-warranty deed, this one containing an express denial of warranty. The court said: "Buck was unwilling to warrant title to those lands which were adversely claimed and he therefore transferred only his right, title and interest, expressly reserving warranty. * * * Hence, Rectangle acquired only such interest as Buck had in and to those lands." Going back further, the court found that Buck's grantor, Lacey, had not acquired title from the Buras Levee Board because the statute conveying title from the state to the levee district did not convey the land in question.

■ There is nothing in Waterman, therefore, to suggest that the Louisiana Supreme Court intended to reduce the scope of the principle of implied warranty. The Robertson-Edman assignment was a mine-run assignment carrying the usual implied warranty; absence of an express warranty and the mere inclusion of the language "right, title, and interest" did not make the assignment a quitclaim deed.

■ An equally persuasive reason for concluding that Edman acquired title to all of the minerals, whether warranty is excluded or not, is that under Loui-

16. The Bazemore assignment is the standard form of assignment and is essentially the same as the general assignment of lease form to be found in Woodward's Louisiana Notarial Manual. Section 1429, p. 487. The pertinent language in Woodward's form is that the "appearer * * * does by these presents transfer and assign unto ———— all his right, title, and interest under said lease."

siana law a buyer is subrogated to his seller's rights and actions in warranty against all others. An exclusion of warranty clause merely restricts claims that the buyer or his assigns might make against the person excluding warranty —not against his predecessors in title. Article 2503, LSA–Civ.Code of 1870, provides:

> "The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty. *But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others.*"

Edman would be subrogated to Robertson Oil Company's rights and actions in warranty against all others, including the original lessor, Bazemore. True, two of the assignments in Edman's chain of title were made with express exclusion of warranty, but under Article 2503, that in no way affected Edman's rights against Bazemore. Those stipulations merely restricted claims against the assignors who excluded warranty; they did not restrict claims against Bazemore. Consequently, when Bazemore subsequently acquired title to the outstanding one-half mineral interest while the Bazemore-Robertson Stores lease was in effect, that title inured to the benefit of Edman by operation of Article 2503.

There were two ways for Bazemore to have avoided this result: (1) he could have executed the Bazemore-Robertson Stores lease with an express exclusion of warranty, or (2) he could have sold the land to a third person before the Keatchie servitude prescribed, causing the servitude to revert to that person instead of to him, in which case there would have been no after-acquired property. It goes without saying that the second alternative would have to be a good faith alienation, not a simulation or an attempt to defraud the lessee of his rights under the lease. Bazemore, however, followed neither of those courses. Instead, he executed a lease with an *express* provision of warranty, and thereby acquired title when Keatchie's servitude prescribed. Wells v. Blackman, 121 La. 394, 46 So. 437. Consequently, he was estopped to deny that his after-acquired title passed by the original conveyance.[17] See Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273; Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633. It has not escaped the Court that for three years Bazemore accepted the half rental, and for four years accepted the full rental, facts that confirm the interpretation of the assignment that the parties intended the lessee to receive the benefit of the after-acquired title to the Keatchie half mineral interest.

There is no inconsistency between our holding here and the Louisiana Supreme Court's holding in Hicks v. Clark, 1954, 225 La. 133, 72 So.2d 322. Hicks v. Clark held that Louisiana's strong policy against long encumbrances on property cannot be defeated by the sale of a landowner's reversionary right to minerals; that the reversionary right is a "hope" that the minerals will return to the land and that such a "hope" cannot become an object of commerce. Here the lessor did not purport to sell a reversionary right.[18] As Ashley did in Gayoso Co. v. Arkansas Natural Gas Corp., 176 La. 333, 145 So. 677, Bazemore leased a mineral interest he did not own at the time but which later reverted

---

17. The defendants, in this suit and in the earlier suit, have made much of the point that title to real estate cannot be *acquired* by estoppel. Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635. But this is beside the point. Although title cannot be acquired by estoppel, "the doctrine may be employed for the purpose of prohibiting a grantor from denying that an after-acquired title passed by the original conveyance." Waterman v. Tidewater Associated Oil Co., 1947, 213 La. 588, 35 So.2d 225, 233.

18. See McDonald v. Richard, 1943, 203 La. 155, 13 So.2d 712; Gulf Refining Co. v. Orr, 1945, 207 La. 915, 22 So.2d 269.

to him. There is a fundamental distinction between a lease and a mineral servitude, between an attempted sale of a hope for the return of the mineral interest in a servitude and the perfection of a lease through the lessor's after-acquired title to all the mineral rights he purports to lease. Although the doctrine of after-acquired title may apply to a lease of mineral rights not owned at the time of the execution of the lease, the lease cannot affect the outstanding mineral interest until *after* the servitude has prescribed. Here, for example, the servitude would have continued indefinitely if oil had been found. And, if the landowner-lessor had sold the land before the servitude prescribed title would not have been perfected in the lessee because the mineral interest would have vested in the new owner of the land. A lease of mineral rights now owned is not a sale nor can it be equated with a purported sale of a landowner's hope for the return of a reversionary interest in a mineral servitude.[19]

Summarizing, we affirm the principle, recognized in Bazemore v. Whittington, that the doctrine of after-acquired title applies to a mineral lease carrying the usual express or implied warranty under Louisiana law. We overrule the holding in Bazemore v. Whittington that the assignment in question not carrying an express warranty, was a quitclaim deed. We hold that the disputed one-half mineral interest, representing the return of Keatchie's interest to the landowner (Bazemore) by liberative prescription, passed to the lessee (Robertson) by assignment of the lease with an express warranty; thence to Edman, thanks to the doctrine of after-acquired title, by assignment with an implied warranty and by subrogation.

We affirm the judgment and the rulings of the district court to the extent they are consistent with this opinion. We remand the case, however, with instructions that the district court notify all the parties, determine if there has been any change of position by the parties in reliance upon Bazemore v. Whittington, and determine the present status of the one-half mineral interest in a manner not inconsistent with this opinion.

---

19. "The writer feels that a 'Bazemore type lease' is not a *lease* of reversionary rights in the sense that the lease would be extended beyond its primary term in the absence of production; or, that the lease would be valid if the mineral rights returned to the land within the primary term of the lease when the lessor had previously sold the land. For these reasons, it is suggested that, when the doctrine of after-acquired title perfects a lease of mineral rights not owned at the time of execution but subsequently acquired, there is no violation of the policy considerations adhered to by the Louisiana Supreme Court." Carter, Mineral Rights and After-Acquired Title, 18 La. L.Rev. 312, 322 (1958); see also Hussey, The Top Lease and the Reversionary Right in the Louisiana Law of Oil and Gas, 18 La.L.Rev. 300 (1958); Note, 19 La.L.Rev. 538 (1959).