**72 So.2d 322**

**HICKS et al.  v.  CLARK et al.**

No. 41312.

Supreme Court of Louisiana.

March 22, 1954.

Rehearing Denied April 26, 1954.

W. M. Phillips, W. S. Waller, Shreveport, for plaintiff-appellant.

Bolin & Bolin, Shreveport, R. H. Lee, Benton, for defendants-appellees.

HAWTHORNE, Justice.

The plaintiffs, S. B. Hicks, J. R. Querbes, and W. M. Phillips, instituted this suit against the defendants, Prentice O. Clark, Sam Brown, M. Daley Brown, and Odie Waites, to be recognized as owners of one-fourth of the oil, gas, and other minerals in 1142.88 acres of land owned by the defendants in Bossier Parish, Louisiana. Plaintiffs' suit was dismissed on exceptions of no cause or right of action, and they have appealed.

The material facts as disclosed by the petition and the attached documents are as follows:

On December 9, 1941, W. C. Raines sold the property to J. H. Brown, reserving one-fourth of the oil, gas, and other minerals in the land. By mesne conveyances the property was acquired subject to this mineral reservation of Raines by the Hicks Company, Ltd., Inc. On July 16, 1948, the Hicks Company sold the surface together with one-half the minerals to Red Chute Land Company, Inc. In this act of sale the Hicks Company specifically reserved unto itself, its heirs and assigns, the *right of reversion* of the outstanding one-fourth mineral interest which had been reserved by Raines in his sale to Brown on December 9, 1941, and the act provided that the reversionary mineral right retained by the Hicks Company, the vendor, should prescribe at the same time as other mineral rights then owned and reserved by this vendor, the Hicks Company. After conveying the property to Red Chute Land Company, Inc., Hicks Company was liquidated, and in the course of this liquidation the liquidator executed an instrument purporting to convey to the plaintiffs herein " * * * all of the mineral and reversionary rights in and to all of the lands conveyed by the Hicks Company, Ltd., Inc., to Red Chute Land Company on July 16, 1948 * * *". The purpose of this instrument was to convey unto these plaintiffs the mineral rights reserved by Hicks Company in its sale to Red Chute Land Company as well as the right of reversion of the outstanding one-fourth mineral interest which had been re-tained by Raines in his sale to Brown. The defendants by mesne conveyances are now the fee simple owners of the property.

It is plaintiffs' contention that on December 9, 1951, the date the mineral servitude created by Raines by his reservation of one-fourth of the minerals in his deed to Brown was extinguished by liberative prescription, this one-fourth mineral interest reverted to them as transferees of Hicks Company, Ltd., Inc., under the reservation of the right of reversion in the deed from Hicks Company to Red Chute Land Company.

It is defendants' contention that, when the servitude in favor of Raines was extinguished by prescription, one-fourth of the minerals reverted to the land of which they are the fee owners.

In the cases of Gailey v. McFarlain, 194 La. 150, 193 So. 570; McDonald v. Richard, 203 La. 155, 13 So.2d 712, and Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269, this court used language which would indicate that a reversionary interest could be legally sold although the right of the owner of the fee simple title to reserve in a sale of the land or convey the reversionary mineral interest was not an issue. For example, in Gailey v. McFarlain [194 La. 150, 193 So. 573] it was said that "It is clear that the reversionary mineral interest of the owner of the fee simple title is 'a certain object,' which can be legally sold". On the other hand, in Long-Bell Petroleum Co., Inc., v. Tritico, 216 La. 426, 43 So.2d 782;

McMurrey v. Gray, 216 La. 904, 45 So.2d 73, and Liberty Farms, Inc., v. Miller, 216 La. 1023, 45 So.2d 610, 614, this court refused to give any effect to reservation of minerals made in a transfer of land when the minerals were outstanding at the time of the transfer, on the theory that one cannot reserve what he does not own. In the course of the opinion in the Liberty Farms case we said: "One may not reserve reversionary rights to minerals when he is not the owner of the minerals at the time the reservation is made. It is settled that, in such instances, the reservation is ineffective and the outstanding mineral interests revert to the person owning the land at the time prescription accrues."

The question of whether a landowner who has mineral servitudes outstanding against his estate can sell the land and reserve the reversionary rights, or as the owner sell to another the reversionary rights, was not an issue in any of the cases cited above. The question is squarely presented, however, for the first time in this case.

Appellants in support of their contention rely on Articles 2448, 2449, 2450, and 2451 of the Civil Code, which provide that any effects of commerce may be sold when there exists no particular law to prohibit the traffic thereof; that not only corporeal objects may be sold but also incorporeal things, such as a servitude or any other right; that a sale can be made of a thing to come, and that an uncertain hope may be sold, as the fisher sells a haul of his net before he throws it, and, although he should catch nothing, the sale still exists because it was the hope that was sold together with the right to have what might be caught. They argue from these articles that in the instant case the reservation of the reversionary right was nothing more than the reservation or sale of a hope and consequently was an object, thing, or right susceptible to sale.

In the landmark case of Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, this court refused to recognize an estate in minerals separate from the soil, or to recognize that oil, gas, and other minerals were susceptible of ownership as such separate and apart from the soil, or to recognize that there could exist two estates of full ownership, one of the oil, gas, and other minerals and the other of the soil itself. The court held that a landowner does not transfer or reserve ownership of the minerals when he transfers or reserves a mineral interest, but creates a real servitude and is considered to have granted or retained only the right to explore for minerals.

If the reservation of the reversionary right under which the plaintiffs claim one-fourth of the minerals is a reservation of a hope as contended by them, what was reserved, to be consistent with the holding of this court in Frost-Johnson Lumber Co. v. Salling's Heirs, supra, was the hope of a servitude or the hope of the right to ex--

plore in the future for oil, gas, and other minerals. More specifically, what was reserved was the hope that the outstanding right to explore for the minerals would become extinguished so that a new servitude or right to explore would come into existence in favor of the owner of the hope or reversionary interest, even though the owner of such hope or reversionary interest would not then be the owner of the land.

Since we are here dealing with a future right to go on the land and explore for oil, gas, and other minerals, or a right which is to come into existence upon the extinguishment of the outstanding mineral servitude, we must look for a solution to the problem to the articles of our Code dealing with servitudes found in Book II, "Of Things, and of the Different Modifications of Ownership", in addition to the articles on sales cited and relied on by appellants. Under the articles in this book dealing with conventional servitudes, the right of imposing a servitude permanently on an estate belongs to the owner alone, C.C., Art. 729; see Long-Bell Petroleum Co., Inc., v. Tritico, supra; U. S. v. Nebo Oil Co., 5 Cir., 190 F.2d 1003; and this servitude, once created, becomes a charge upon the estate or lands and not upon a person, C.C., Art. 709. If the right of servitude is not exercised within 10 years, the servitude is extinguished by liberative prescription, C.C., Arts. 783, 789, and the estate is no longer charged or burdened with this servitude.

Under the law relative to predial servitudes, therefore, such servitudes are extinguished by the liberative prescription of 10 years. If the reservation of the reversionary right is analogous to a sale of a hope as contended by appellants, liberative prescription would not extinguish this hope, as this kind of prescription is not applicable to a fully executed sale, even the sale of a hope. It is the servitude, the right to explore for oil, gas, and other minerals, which is extinguished for non-usage for 10 years. If the reservation of the reversionary right in the instant case was, strictly speaking, the reservation of a hope governed by the articles of our Code dealing with sales, that hope could never be lost by liberative prescription. Under appellants' contention that the sale of the reversionary right is the sale of a hope, the owner of an estate by conveying the oil, gas, and other minerals lying thereunder would create a servitude, and in the same act in which this servitude was created he could convey also unto his vendee the reversionary right, and thus the vendee would acquire the hope of the extinguishment of his own servitude. In effect, the person acquiring the servitude would have the right to go upon and explore the lands of the vendor for oil, gas, and other minerals for a period in excess of 10 years, because, when the existing servitude became extinguished for non-use at the end of 10 years, he could then exercise the right under his reversionary right. If appellants are correct in their contention that the sale of the reversionary right is

the sale of a hope, the hope thus sold could be fulfilled at any time in the future, and the mineral servitude which would become effective would cause the land to be burdened with a mineral servitude for a longer period than 10 years without user, contrary to the public policy of this state that the right to explore for oil, gas, and other minerals in the absence of use reverts to the land in a period of 10 years. Palmer Corporation of Louisiana v. Moore, 171 La. 774, 132 So. 229, and authorities therein cited; see Daggett on Louisiana Mineral Rights (Rev.Ed.1949), p. 53.

We consider the reservation of the reversionary interest in this case as an effort to circumvent the public policy of this state, and we therefore refuse to recognize or give effect to it. The stipulation in the reservation that liberative prescription would commence at the date of the reservation does not make the reservation any less objectionable from the standpoint of public policy. Even with this limitation the mineral rights could still be outstanding for more than 10 years without exercise of the right to explore. Under Article 709 of the Civil Code the owners of an estate have the right to establish on such estate such servitudes as they deem proper, provided nevertheless that such servitudes 'imply nothing contrary to public order or public policy, and, as pointed out by us hereinabove, to recognize appellants' ownership in the minerals in the instant case would be contrary to public policy.

According to the petition the Raines servitude in the instant case has prescribed for non-usage, and the lands under which appellants claim one-fourth of the minerals are no longer burdened with a servitude, and these plaintiffs are not the owners of these minerals.

For the reasons assigned, the judgment of the lower court dismissing plaintiffs' suit on exceptions of no cause or right of action is affirmed; plaintiffs-appellants to pay all costs.

HAMITER and McCALEB, JJ., concur in the decree.