TATE, Justice
(dissenting).
The unanimous decision of this Court following the initial hearing correctly, in my opinion, disposes of the issues of this lawsuit. I therefore respectfully dissent.
The central question of this appeal concerns a land-vendor’s power to reserve the right, after he sells the land, to receive the reversion of an outstanding mineral royalty interest previously created by him.
Although this precise question has never been presented, this Court has decisively and repeatedly held that a land-vendor may not reserve or deal with the reversionary rights to an outstanding mineral interest itself [1] (as distinguished from an outstanding mineral royalty interest.[2]) Hicks v. *699 Clark, 225 La. 133, 72 So.2d 322. As we stated in Liberty Farms v. Miller, 216 La. 1023, 1033, 45 So.2d 610, 614: “One may not reserve reversionary rights to minerals when he is not the owner of the minerals at the time the reservation is made. It is settled that, in such instances, the reservation is ineffective and the outstanding mineral interests revert to the person owning the land at the time prescription accrues. McDonald v. Richard, 203 La. 155, 13 So.2d 712; Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269, and Long Bell Petroleum Co. v. Tritico (on rehearing), 216 La. 426, 43 So.2d 782.” See also Long-Bell Lumber Co. v. Granger, 222 La. 670, 63 So.2d 420, McMurrey v. Grey, 216 La. 904, 45 So.2d 73.
The majority opinion on rehearing accepts the reservor’s argument that the owner is to be accorded full freedom of contract with regard to the present reversionary interest affecting minerals. This argument was specifically disapproved in, Hicks v. Clark, 225 La. 133, 72 So.2d 322, 325, which pointed out that the landowner’s liberty of contract with regard to mineral servitudes is subject to the proviso that no servitude contrary to public policy could be created. This leading decision flatly stated, after reviewing the mineral jurisprudence, 72 So,2d 325: “We consider the reservation of the reversionary [mineral] interests in this case as an effort to circumvent the public policy of this state.”
Although as pointed out by the majority a mineral royalty interest is another variety of a real right than is a mineral servitude, either real right “is susceptible of all the modifications that the will of the parties can suggest, except such as are forbidden by law.” LSA-C.C. Art. 2013. (Italics mine.) With regard to whether it is or is not against the public policy of this State to permit reservation of reversionary interests, I can see no adequate legal basis for differentiating between the mineral royalty interest and the mineral servitude. Both result from the creation of “real obligations”, which are simply defined as “obligations, attached to immovable property.” LSA-C.C. Art. 2010. Whether the real right in question is a right to go upon and explore the land for minerals, or whether it is a conditional right to receive the proceeds of mineral development, is immaterial for purposes of deciding whether the landowner may or may not reserve the reversionary interests affecting minerals.
The distinction sought to be made, namely that the mineral royalty right upon its extinguishment by prescription did not revert' to anyone but merely ceased to be a charge against the immovable property, overlooks in my opinion that a mineral *701 servitude is no less a “charge” against the land (i. e., a real obligation attached to' immovable property). To say that.one sort of mineral interest merely “ceased to be a charge against the land”, while the other “reverts” to someone, is merely a different method of verbal characterization, not distinguished by any difference in legal effects. In both cases, the land is no longer charged with the real obligation, as a result of which some land or mineral owner benefits; which, it is the task of this court to decide.
If it is against the public mineral policy of this State for the landowner who does not own the mineral servitude (i. e., the right to go upon the land to explore for minerals) to attempt to secure the reversion thereof to himself upon the expiration of the outstanding mineral servitude, I cannot see why it is not equally against Louisiana’s public policy for the landowner .who does not own the mineral royalty right (i. e., the right to receive a share of the mineral production if such production occurs within the prescriptive period) to attempt to secure the reversion thereof to himself. There is just no fundamental distinction in this regard between these two types of interests relating to minerals.
Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73, involved a similar attempt to distinguish, for purposes of prescription, a mineral royalty from, a mineral interest. The mineral royalty deed covered several non-continguous tracts of land, and the royalty owner claimed that production within the prescriptive period on one of the tracts had interrupted prescription by user and preserved his mineral royalty right as affecting also the non-contiguous tracts upon which production had not occurred within the prescriptive period. This Court, pointing out that user within the ten years of a mineral servitude did not maintain the servitude as to other non-contiguous tracts likewise subject thereto, stated that “To hold that production on these lots prevented the running of such prescription where a royalty right is involved is, in effect, holding a royalty right to be greater than, or superior to, a mineral right, and this, as we have pointed out hereinabove,[3] is not so,” 41 So.2d 76. We are in this case applying a different and more favorable rule to the land-vendor with regard to his dealing in previously-created mineral royalty interests than we ever have with regard to his dealing in previously-created mineral interests ; we should well take heed of the *703 warning in the Landry case that “such a holding might well serve as basis of numerous methods of circumvention of that policy” [i. e., “the land policy of this state”], 41 So.2d 76.
In the present case, if there had been an outstanding ]4ith mineral interest as well as an outstanding Yath mineral royalty interest, the landowner’s attempt when he sold the property to reserve the former would under our settled jurisprudence have been ineffective, although we are now upholding his attempt to reserve the latter. As suggested by the Landry case, if it is indeed against the public policy of this State to permit a landowner to deal with reversionary mineral interests, then to permit him to deal in the reversionary rights to mineral royalty interests (concerning the right to receive the proceeds from the exercise of the mineral interest (offers an easy method to circumvent such public policy.
For the reasons so stated, I respectfully dissent, in the belief that the original opinion of this court should be reinstated.

. The mineral interest in a land created by reservation or deed “constitutes a servitude imposed upon the land, giving the owner thereof the right of ingress and egress for the purpose of exploring for and reducing to possession the minerals under the property so burdened.” Horn v. Skelly Oil Co., 224 La. 709, 70 So.2d 657, 660.

. See 41 So.2d 75: “In the past this court has observed and stated that a mineral right is necessarily superior to a royalty right. * * * Of these two rights it has been correctly said by one of the authorities on the oil and gas law of this state that the'’royalty right is but an appendage of the right of the mineral owner, and depends upon the eontinued existence of the right -to which it is an appendage.”