HARDY, Judge.
Plaintiff instituted this concursus proceeding for the purpose of procuring a judicial determination of the ownership of funds accrued and to be accrued from gas and condensate production from an 80 acre tract of land located in Webster Parish, Louisiana, and particularly described as follows:
The South Half of Southwest Quarter (S. ½ of SW. ¼) of Section 31, Township 22 North, Range 10 West.
The claimants to the funds, named as defendants in this action, are J. E. Hobbs and his wife, Onia M. Hobbs, on one part and the widow and children of W. L. Coyle on the other.
The pertinent facts, established without dispute, may be briefly outlined.
By warranty deed dated September 12, 1945, W. L. Coyle, as owner, sold and conveyed to Irwin D. McClellan the property above described, reserving to himself, his heirs and assigns an undivided one-half of the oil, gas and other minerals in and under said land, and on September 5, 1946, Irwin D. McClellan conveyed the described tract to J. E. Hobbs.
Pursuant to expropriation proceedings, and as the result of a “Judgment on Declaration of Taking” signed on December 4, 1950, the United States acquired the fee simple title to 74.6 acres out of the above described 80 acre tract in connection with the development of the Bayou Bodcau Reservoir Project. A subsequent judgment dated and filed March 28, 1951, confirmed the condemnation of the property and fixed the compensation to be paid therefor. Both of the above noted judgments described the title vested in the United States as:
“ * * * the fee simple title, subject to existing easements for public roads and highways, public utilities, railroads and pipelines, with reservations to the owners as set forth in Schedule ‘A’ hereof, and further excepting and reserving to the owners, their heirs and assigns, all oil, gas and minerals and rights therein, on and under the lands herein described * * (Emphasis supplied.)
Plaintiff operator acquired an oil and gas lease on the entire 80 acre tract from the Hobbs defendants by instrument dated June 1, 1962, and subsequently acquired a lease by assignment from John Franks, lessee from the Coyle defendants by an instrument dated October 24, 1964 covering the same property. Plaintiff drilled and completed a well in the Davis Sand of the Cotton Valley formation as a producer of gas and condensate, which well was placed in production on January 8, 1965. The 80 acre tract involved in this litigation was included in a 689 acre production unit established by order of the Department of Conservation with respect to production from the Davis Sand. Plaintiff has paid the Hobbs defendants the funds attributable to one-half of the one-eighth royalty interest but withheld payment as to the remaining one-half interest pending judgment in this suit es *710 tablishing the respective rights of the opposed claimants.
The Hobbs defendants assert ownership of the minerals involved on the ground that the mineral servitude created by the reservation of W. L. Coyle in his deed to McClellan of September 12, 1945, was extinguished by the running of the ten-year period of liberative prescription.
The Coyle defendants assert ownership of the mineral interest as to the 74.6 acres taken by the United States under the provisions of LRS. 9:5806 A and as to the mineral interest involved in the remaining 5.4 acres on the ground that the mineral servitude created by the reservation of W. L. Coyle must be construed as an indivisible right and the statutory imprescriptibility of the right as to the 74.6 acres expropriated by the United States must therefore be applied to the 5.4 acres which was not taken.
After trial there was judgment in favor of the Hobbs defendants, recognizing them as owners and entitled to possession of the disputed one-half of the minerals underlying 5.4 acres of the 80 acre tract, and in favor of the Coyle defendants, recognizing them as owners and entitled to possession of the disputed one-half of the minerals underlying 74.6 acres of the 80 acre tract. From this judgment both the Hobbs and the Coyle claimants have appealed and the Coyle defendants have answered the appeal of their opposed claimants.
The rights of the claimants must be determined under the provisions of Act 315 of 1940 which was in effect at the time of the condemnation and expropriation by the United States in 1950. The act was incorporated in the Louisiana Revised Statutes of 1950, 9:5806, and reads as follows:
“When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm, or corporation, and by the act of acquisition, verdict, or judgment, oil, gas, or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas, or other minerals or royalties, still in force and effect, the rights so reserved or previously sold shall be imprescribable (Emphasis supplied.)
Section 5806 of Title 9 of the Louisiana Revised Statutes of 1950 was amended and reenacted by Act No. 278 of 1958 but the above quoted portion, save for immaterial changes in punctuation and the substitution of the word “order” for the word “verdict” and “imprescriptible” for “imprescribable” was unchanged. This legislation is presently shown in LRS. 9:5806 A.
The principal contention of the Hobbs appellants rests upon the argument that the provision of imprescriptibility must be applied only in favor of the landowner and not to the owner of the outstanding mineral servitude at the time the surface rights were acquired by the United States. In support of this contention it is forcibly urged by learned counsel for the Hobbs appellants that the intent of the Legislature must be examined; that other statutory provisions in pari materia must be considered and that a number of principles of statutory interpretation must be given effect.
We do not differ with counsel as to the rules of statutory interpretation upon which he insists and which have been discussed in such a comprehensive and scholarly manner in his argument and brief before this Court. Our difference with counsel may be simply and briefly stated — in our opinion the statutory provision governing the issue presented does not require interpretation.
Support of our position is so well established by our jurisprudence as to preclude the necessity for citation of authority. However, the principles which have impelled our conclusion were cogently, although briefly, stated in the opinion of Mr. Justice McCaleb in the comparatively *711 recent case of State of Louisiana, through Department of Highways v. Bradford (1962), 242 La. 1095, 141 So.2d 378, as follows:
“It is a rudimentary tenet of statutory construction in this State that ‘When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.’ Article 13 of the Civil Code.”
* * * * * *
“This language, albeit broad in scope, is clear and explicit. Hence it is not subject to construction and should be applied according to the most usual signification in which the words used are generally understood. Article 14 of the Civil Code.” (Emphasis supplied.)
The niceties of finely drawn distinctions should not be applied in such manner as would affect the clear meaning of words which is evident from their common, normal, ordinary and acceptable usage. To strive for the determination of the possibility of hidden meanings and undisclosed intentions, to conjure up speculative ambiguities, to theorize as to the effect of imaginary differences of definition would merely provide interesting intellectual exercises which, as we believe, would have neither application to nor effect upon the determination of this case.
As the result of the judgment of condemnation on December 4, 1950, Hobbs was divested of his ownership of 74.6 acres of land. Under this circumstance we are at a loss to understand how Hobbs could claim the benefit, five years later, of the reversion of the outstanding mineral servitude, owned by Coyle, to the “owner of the land.” In the absence of the statutory provision of imprescriptibility the tolling of the prescriptive period of ten years by non-user, on September 12, 1955, would have vested the title to the mineral servitude, theretofore outstanding in Coyle’s ownership, in the United States. Nor could Hobbs have prevented this result by any contractual provision, for he could not sell nor retain a right which he did not then possess and which he could only hope would come into existence in the future. The right that Hobbs might have attempted to reserve, as stated in the opinion of Mr. Justice Hawthorne in Hicks v. Clark, 225 La. 133, 72 So.2d 322:
“ * * * was the hope that the outstanding right to explore for the minerals would become extinguished so that a new servitude or right to explore would come into existence in favor of the owner of the hope or reversionary interest, even though the owner of such hope or reversionary interest would not then be the owner of the land.”
The Hicks case, supra, is directly in point as authority for the principle that an attempted reservation of the reversion of an outstanding mineral interest is ineffective. This principle was clearly enunciated in the opinion of Mr. Justice McCaleb in an earlier case, Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610, as follows:
“One may not reserve reversionary rights to minerals when he is not the owner of the minerals at the time the reservation is made. It is settled that in such instances, the reservation is ineffective and the outstanding mineral interests revert to the person owning the land at the time prescription accrues. McDonald v. Richard, 203 La. 155, 13 So.2d 712; Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269, and Long-Bell Petroleum Co., Inc. v. Tritico (on rehearing), 216 La. 426, 43 So.2d 782.”
Concededly the principal purpose of Act 315 of 1940 was designed to prevent the acquisition by the United States of mineral rights which constitute valuable natural resources of the State of Louisiana. The action taken by the Legislature, in order to accomplish this purpose, in no way affected existing ownerships of mineral servitudes but it simply eliminated the application and effect of liberative prescription. In plain *712 words, the statute “froze” the rights to mineral servitudes still in force and effect.
The provision of imprescriptibility was a protection of the rights of the owners thereof as of the time of the acquisition of the fee simple title by the United States. In our opinion, to hold otherwise would do violence to all practical considerations of reason as well as to what we regard as the plainly expressed wording of the statute and the principles established by our jurisprudence.
We are not unaware of nor have we neglected to give consideration to the numerous other arguments advanced by counsel for the Hobbs defendants-appellants which were directed to the interpretation of the statute. However, we think these arguments would only be entitled to discussion in this opinion if we accepted the major premise upon which they are based, namely, that the Court should interpret the statute at issue. As observed supra, we find no need for “interpretation” of the meaning of provisions which are clear and unambiguous.
The claim of the Coyle defendants, asserted by appeal and by answer to appeal, to the minerals in the 5.4 acres not acquired by the United States, in our opinion, is not entitled to recognition. The Coyles cannot — at one and the same time — claim the benefit of the statute preserving their rights to the minerals in the major portion of the tract involved and disregard its effect upon the minor portion. The statute by its very wording applies only to the land acquired by the United States. The servitude as to land not acquired is not affected and the rights thereto are determined in accordance with established principles of law relating to such servitudes. Accordingly, it is our conclusion that the question of the division of the servitude is not at issue under the facts of this case. However, even if it be conceded that the statute effects a “division” of the servitude, we are not aware of any restriction or prohibition against such action by the Legislature in this respect.
For the reasons assigned the judgment appealed from is affirmed, and,
IT IS ORDERED, ADJUDGED AND DECREED that the parties below named in the proportions set forth are recognized as the owners of the disputed undivided one-half of the oil, gas and other minerals in the tracts of land respectively described as comprising the South Half of the Southwest Quarter (S ½ of SW ¼) of Section 31, Township 22 North, Range 10 West, Webster Parish, Louisiana, and as such entitled to their respective proportional interest in and to the funds on deposit in the Registry of Court and to all funds which may accrue in the future:
As to the property described as being:
A tract or parcel of land being in the S/2 of the SW/4, Section 31, Township 22 North, Range 10 West of the Louisiana Meridian (Northwestern District Louisiana) in the Parish of Webster, State of Louisiana, and more particularly described as follows:
Beginning at the point of intersection of the township line between Townships 21 and 22 North and range line between Ranges 10 and 11 West; also being the corner common to Sections 1, 6, 31 and 36; run thence N. 00 degrees 10 minutes West along the range line between Ranges 10 and 11 West, 1329 feet to a point; thence South 89 degrees 43 minutes East, 2677 feet to a point; thence South 00 degrees 14 minutes East, 825 feet to a point on the center line of Louisiana State Highway No. 90; thence North 35 degrees 05 minutes West, along the center line of the said highway, 600 feet to a point; thence South 00 degrees 13 minutes East, 993 feet to a point on the township line between Townships 21 and 22 North, thence North 89 degrees 51 minutes West, along the said township *713 line, 2344 feet to the point of beginning, and containing 74.6 acres, more or less;
Lucy F. Coyle . .. 2/10
Durrell C. Coyle . 1/10
Ethel Coyle Truly. 1/10
Lavera Coyle Harper. 1/10
M. L. Coyle. 1/10
Dalton B. Coyle. 1/10
William E. Coyle. 1/10
Idell C. Coyle. 1/10
Ivy Coyle Ham. 1/10
It is further ordered, adjudged and decreed that J. E. Hobbs and Onia M. Hobbs are recognized as being entitled to the ownership of the disputed one-half of the oil, gas and other minerals in that part of the South Half of the Southeast Quarter (S ½ of SE ¼) of Section 31, Township 22 North, Range 10 West, Webster Parish, Louisiana, less and except the 74.6 acre tract above described, containing 5.4 acres, more or less.
Costs of this appeal are taxed equally against the Hobbs and the Coyle appellants.