| aDALEY, Judge.
Plaintiff, Energy Development Corporation (EDC), appeals a Summary Judgment granted in favor of defendants, Quality Environmental Processes, Inc., Michael X. St. Martin and Virginia Rayne St. Martin (the St. Martin Group), which held that the mineral servitudes claimed by plaintiff had prescribed by ten years non use. We vacate the grant of Summary Judgment and remand for the reasons below.
The St. Martin Group are the surface owners of various tracts of land in Terre-bonne Parish (the “Protective Area” or the St. Martin tracts). Plaintiff EDC is record owner of several mineral servitudes on these tracts. On June 5, 1997, the St. Martin group made demand on EDC to release the servitudes, alleging that they had been extinguished by prescription of ten years non-use.[1] In response, on July 7, 1997, plaintiff EDC filed a Petition for Declaratory Judgment and Permanent Injunction, seeking a declaration that two of its servitudes had not expired and a permanent | ¿injunction prohibiting defendants’ interference with EDC’s enjoyment of its servitudes.
Both parties filed Motions for Summary Judgment and supporting affidavits and exhibits. After a hearing, the trial court rendered judgment in favor of defendants, finding that EDC’s mineral servitudes were conveyed by the instrument dated August 31, 1966 and mot by the instrument dated May 3, 1971 (as argued by EDC), and further that plaintiffs mineral servi-tudes had prescribed by ten years non-use.
On appeal, EDC’s brief does not focus on the prescription of the mineral servi-tudes conveyed by the 1966 servitude. Instead, the brief traces the mineral rights’ chains of title in both the 1966 and 1971 conveyances, and argues that the trial judge failed to consider the parties’ intentions as evidenced by years of mineral activity. EDC argues that its servitudes stem from both the 1966 and 1971 conveyances. The St. Martin Group’s brief essentially argues that since all the mineral servitudes conveyed by the August 31, 1966 conveyance have prescribed from ten years non-use, the chain of title is not the central issue in the case.
The trial court issued thorough Reasons for Judgment that provide this court with its findings of fact and reasoning. Following our review of the record and extensive exhibits, however, we find that the trial erred in the granting of Summary Judgment.
The parties stipulated that the mineral rights subject to this dispute are all located in what is known and referred to by the parties as the “Protective Area” in Terrebonne Parish. The central issue in this case is whether EDC’s mineral rights in the Protective Area stem from the 1966 conveyance or the 1971 conveyance. The tracts affected by the 1966 conveyance (the Protective Area/St. Martin tracts) are not | ¡¡contiguous to each other, and thus mineral activity on one tract would not interrupt prescription on another.[2] However, the 1971 mineral conveyance created one large contiguous tract, which includes the Protective Area created by the 1966 conveyance (the St. Martin tracts), and thus mineral activity on any part of it would interrupt prescription of the mineral servitude as to the whole tract.[3]
*968 The following excerpt from the trial court’s Reasons for Judgment provide background of the case:
With respect to the “Protective Area” in the Sunrise Field Area, as defined in the August 31, 1966 deed in which the lands at issue are located, Southdown, Inc. conveyed to Southdown Exploration, Inc. the right to receive assignments of oil, gas and minerals as to certain specifically defined “Known Productive Sands” when, and if, those sands were proven to be commercially productive in the Protective Area. The correct legal classification of these rights in the Protective Area of the Sunrise Farms Area is one of the basic issues of law presented in this proceeding.
[[Image here]]
Subsequent to the execution of the August 31,1966 deed, Southdown Exploration, Inc. (a Louisiana Corporation) was merged into Southdown Exploration, Inc. (a Delaware Corporation), “and by name change dated April 25, 1967, Southdown Exploration, Inc. became Southdown Burmah Oil Company.” Thereafter, Southdown Burmah Oil Company transferred forty (40%) percent of all its assets, including the mineral servitudes and mineral rights acquired under the August 31, 1966 deed to Pelto Oil Company. Subsequently, by name change dated February 12, 1970, Southdown Burmah Oil Company became Burmah Oil Development, Inc.
By 1970, as the result of the foregoing conveyances and transactions, the fee title owner of the land at issue continued to be Southdown, Inc., and the mineral servitudes, and mineral rights, affecting the Productive Area and the Protective Area in the Sunrise Field Area created by the August 31,1966 deed were owned sixty (60%) percent by Burmah Oil Development, Inc. and forty (40%) percent by IfiPelto Oil Company. On June 17, 1970, Southdown, Inc. sold its fee title interest to the lands located in all Productive Areas and Protective Areas as described in the August 31, 1966 deed to Southdown Lands, Inc. Following that acquisition the new fee owner, South-down Lands, Inc., by deed dated May 3, 1971, but effective January 1, 1971, conveyed to Pelto Oil Company mineral servitudes covering all of its interest in and to all oil, gas and minerals in the lands then owned by Southdown Lands, Inc., including those lands located in the Protective Area of the Sunrise Field Area in which the lands at issue are located. This deed contained the very important express exception:
There is excepted from the conveyance here made all lands and mineral rights heretofore conveyed or transferred by Vendor or its predecessors in title to third parties or terminated by prescription.
The interplay between this conveyance of mineral servitude to Pelto Oil Company, effective January 1, 1971, including the “exception” language quoted above, and the mineral servitude and mineral rights previously created by the August 31, 1966 deed is one of the basic issues presented to the Court in connection with these motions for Summary Judgment.
Subsequent to the conveyance of minerals to Pelto Oil Company, Michael X. St. Martin and Virginia Rayne St. Martin acquired the land located in the Sunrise Field Area, subject to any mineral servitudes and mineral rights presently in existence. That acquisition was the result of a series of mesne conveyances culminating in a Cash Sale Deed to the St. Martins on June 23,1992. The other defendant-plaintiff in reconvention, Quality Environmental Processes, Inc. (hereinafter referred to as “QEP”) acquired its ownership interest in the property by virtue of a conveyance from the St. Martins dated August 15, 1994.
(Emphasis added.)
Appellant’s expert, Keith T. Hebert, notes that the specific tracts of the Protec *969 tive Area (the St. Martin tracts) created by the 1966 conveyance are not contiguous to each other. He asserts in his affidavit that the Protective Area is included within the larger mineral conveyance made by the 1971 agreement, and that continuous mineral production activities in the area covered by the 1971 mineral conveyance have tolled Mineral Code Article 16 prescription regarding the smaller, included Protective Area, because the lands in the 1971 grant are contained in a contiguous tract. Appellee’s expert, whose affidavit starts with the premise that only the 1966 agreement conveyed mineral rights in the Protective Area, asserts that there |7has been no production activity within the Protective Area to prevent the accrual of prescription.
The trial court found that the servitudes conveyed by the 1966 agreement had all prescribed by ten years non-use. As the trial court recognized, one of the basic issues presented to the trial court in connection with the Motions for Summary Judgment is the interplay between the two conveyances of August 31, 1966, and May 3, 1971. The trial court held that the mineral servitudes that the St. Martin Group asked to be released were granted by the 1966 conveyance, and that on the properties described therein, the evidence failed to show sufficient activity to prevent the mineral servitudes from prescribing from 10 years non-use. The trial court rejected EDO’s argument that the 1966 agreement required the future conveyance of those mineral rights after the passage of ten years from the execution of the conveyance.
The trial court found,' in its Reasons for Judgment, that the 1971 conveyance did not grant the questioned servitudes in the Protective Area for three reasons. First, the 1966 conveyance had already conveyed all of the mineral rights in the Protective Area, because the 1971 conveyance contained an exclusion of “all mineral rights heretofore conveyed.” Second, the “omnibus” property description attached to the 1971 conveyance was not, as a matter of law, sufficient public notice of an encumbrance. Third, the court found that EDO’s interpretation of the conveyances violated the public policy disfavoring continued dismemberment of the title to immovable property.
We do not agree with the finding of the trial court as to the 1971 agreement, and we will address each of these factors as set forth by the trial court.
IsPrior Conveyance of the Mineral Rights
The trial court found that the 1966 conveyance had already granted all of the mineral rights in the Protective Area that the 1971 agreement attempted to convey. The 1971 conveyance contains the following clause:
There is excepted from the conveyance here made all lands and mineral rights heretofore conveyed or transferred by Vendor or its predecessors in title to third parties or terminated by prescription.
The 1966 instrument conveyed all of Grantor’s right, title and interest in and to the oil, gas and other minerals located in, on or under the lands therein identified as the Productive Area, and the conditional obligation of Grantor to convey single sand mineral rights to the grantee in the Protective Area. These sands are specifically listed in the Exhibit “I” to the 1966 agreement. The trial court found that the 1966 conveyance took all the minerals in the Protective Area out of commerce because it sufficiently burdened the Protective Area by the obligation of the landowner to make the single sand conveyances when the conditions were satisfied. The trial court held that the conditional obligation to transfer constituted “mineral rights heretofore conveyed” and thus were excluded by the specific language of the 1971 conveyance quoted above. This court questions whether the creation of a conditional obligation to transfer a mineral interest in the future is a conveyance for the *970 purpose of exclusion from the 1971 agreement. However, we need not decide the case on that issue because we find that the 1966 conveyance was limited in nature. The 1966 instrument only conveyed a conditional future interest in the listed sands. All other mineral rights remained with the surface owner. The 1971 document .conveyed “all of grantor’s right, title and interest to all oil, gas and other minerals” located in the various tracts described by an attached exhibit, except what rights had been heretofore conveyed. As the 1966 obligation was limited to specific sands in the | {¡Protective Area, we find that there still existed mineral rights capable of being alienated in the Protective Area by the 1971 conveyance.
Omnibus Property Description in 1971 conveyance
The next factor in the trial court’s judgment was its finding that the property description in the 1971 conveyance was an unenforceable “omnibus” property description clause. The trial court said:
This lawsuit is a result of the inadequate omnibus property'description and ponders the public policy concerns expressed by Louisiana courts and why court have rejected such clauses as being valid as to third parties.
As to the St. Martin Group, who are third parties to the May 3, 1971 conveyance, no mineral servitude was created by the document because the omnibus description was not sufficient to give notice to third parties.
The ambiguous property description also calls into play one additional Civil Code Article not previously argued, i.e., Civil Code Article 730 which provides as follows:
Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. Louisiana Civil Code Art. 730.
Accordingly, any doubt as to whether the May 3, 1971 Southdown Lands Mineral Conveyance created a mineral servitude within the Protective Area on the St. Martin Land should be resolved in favor of the St. Martin Group. This court finds that no such servitude was ever created.
The court found that the 1971 conveyance lacked an adequate property description sufficiently specific to give notice 'to third parties. However, we disagree. The property description reads as follows:
... all of its [Southdown Lands, Inc.] right, title and interest in and to all oil, gas, and other minerals located in, on or under all lands now or formerly owned by Vendor, wherever situated, including but not limited to, the lands listed on the Exhibit attached hereto as Exhibit ‘A’...
Conceivably, this description might be vague, except for the specifically identifiable properties described in Exhibit “A” that was attached to the May 3, 1971 conveyance. Exhibit “A” contains a lengthy description of properties covered by the conveyance. l10Of pertinence to this litigation, Item 22 in Exhibit “A” lists the sale of certain property in Terrebonne Parish, Louisiana, to be found at COB 496, Entry # 383344. The property description attachment also lists an act of amendment affecting lands in Terrebonne Parish to be found at COB 501, Entry # 388881.
We find that the property description found in Exhibit “A” to the May 3, 1971 conveyance is adequate to put third parties on notice as to those properties because the conveyance describes the property affected by reference to other conveyances available in the public records. This situation is distinguishable from Florida Gas Exploration Co. v. Bank of St. Charles & Trust Co., 435 So.2d 535 (La.App. 5 Cir.1983), where a property description in a conveyance was deemed incomplete because it required third parties to seek documents outside of the public records to obtain a complete property description. In that case, an exhibit that continued the *971 property description was not attached to the conveyance as described, and third parties would have had to get the information from the bank who held the mortgage. In the case at bar, on the record before us, the 1971 conveyance describes the affected property by reference to other recorded conveyances available in the public records.
We also find that the property description in the 1971 conveyance is not an “omnibus” property description under Williams v. Bowie Lumber Co., 214 La. 750, 38 So.2d 729 (1948). That case relied on the definition of an omnibus property description found in Daigle v. Calcasieu Nat’l Bank in Lake Charles, 200 La. 1006, 9 So.2d 394 (1942). In that case, the omnibus property description conveyed property described as “all vendor’s undivided ... interest in all the property that he now possesses in his name at present date in ... parish, both real and personal property.” Such a description was not deemed specific enough to alert third parties. Quoting Hargrove v. Hodge, 9 La.App. 434, 121 So. 224, 225 (2 Cir.1928), the Supreme Court recognized that:
ln“The description in a deed must be such that the property intended to be conveyed can be located and identified, and the general rule is that the description must fully appear within the four corners of the instrument itself, or that the deed should refer to some map, plat, or deed as a part of the description, so that the same may be clear.”
In the instant case, the 1971 conveyance describes the affected properties by referring specifically to prior conveyances located in the public records.
This court finds that the property description in the May 3, 1971 conveyance was not an insufficient omnibus property description as to the properties listed in Exhibit “A”. We reviewed the affidavit of Keith T. Hebert (EDC’s expert), who was able to map the lands affected by both conveyances. He concluded that the area covered by the 1966 conveyance (the Protective Area) is included in the area covered by the 1971 conveyance, but the 1971 conveyance, in addition, covers a greater area. When the Protective Area is viewed in context of the 1966 conveyance only, according to Hebert’s affidavit, the St. Martin tracts are not contiguous to each other. But when the St. Martin tracts are viewed in the context of the 1971 conveyance, which included the 1966 Protective Area plus additional lands, Hebert’s affidavit concludes that the areas covered by the 1971 conveyance (which include the St. Martin tracts) are one contiguous tract, and hence, drilling activity on any portion of the 1971 mineral conveyance would interrupt prescription as to the whole.
The St. Martin Group’s expert affidavits only address drilling activity on the St. Martin tracts, not the 1971 conveyance area as a whole. Because we find that the 1971 conveyance did grant mineral rights over the Protective Area, we find that an issue of material fact exists as to whether the drilling activity described in the Hebert affidavit (the 36 wells) over the whole of the 1971 conveyance area interrupts prescription of the mineral rights granted by the 1971 conveyance on the St. Martin tracts.
| ^Public Policy against dismemberment of title
Last, the trial court found that EDC’s interpretation of the two conveyances violated the public policy disfavoring continued dismemberment of the title to immovable property. The court also found that EDC’s interpretation violated the public policy of the expiration of mineral rights by the ten year prescription of nonuse.
The trial court quoted Whitehall Oil v. Heard, 197 So.2d 672 (La.App. 3 Cir.1967), for the first public policy. That court held that a landowner cannot create a single servitude or mineral royalty right on two or more noncontiguous tracts, and if this is attempted by a single instrument, there are nevertheless as many servitudes or royalty interests as there are nonconti- *972 guous tracts of land. This case’s holding does not prevent a landowner, such as Southdown, Inc., from granting defined and restricted mineral rights in certain listed known productive sands (the 1966 conveyance), and then later granting a nonrestrietive mineral servitude (all grant- or’s right, title, and interest in and to all oil, gas and other minerals ...: the 1971 conveyance) over the same immovable property, that excepts from the latter grant the mineral rights already conveyed by the first conveyance.
The tidal court disagreed with EDO’s interpretation of the 1966 agreement that alleged it required an open-ended obligation to convey the rights to the known productive sands at a time later than ten years after the effective date of the agreement.
EDO’s interpretation would effectively impose on the fee title owner and any subsequent transferee of the fee title owner of lands included in the Sunrise Field Protective Area an open-ended obligation to transfer mineral rights as to Known Productive Sands proven to be commercially productive in the Sunrise Field Protective Area (and all other Protective Areas described in the August 31, 1966 deed) for indefinite periods of time extending substantially beyond ten (10) years.
H*
|1sThe more correct and least restrictive interpretation of those provisions of the August 31, 1966 conveyance insofar as they relate to the Protective Area described therein (including the Sunrise Field Protective Area) and the obligation to convey title to oil, gas and minerals in Known Productive Sands subsequently proven to be commercially productive is that the rights granted to each Known Productive Sand in each Protective Area must be treated under Article 16 of the Mineral Code as independent and separately existing mineral rights created on August 31, 1966, subject to the prescription of ten (10) years nonuse. In other words, if a Known Productive Sand in any Protective Area, was not proven to be commercially productive. within ten (10) years from August 31, 1966, it was extinguished and the rights of the pertinent fee title owners (including members of the St. Martin Group), would no longer be burdened by the mineral rights created on August 31, 1966, as to that Known Productive Sands.
 We agree with the trial court’s position that all mineral rights are subject to the prescription of ten years non-use, and any contractual attempt to lengthen the life of a mineral right beyond this time is against public policy, as per Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954) and LeBleu v. LeBleu, 206 So.2d 551 (La.App. 3 Cir.1967). Therefore, we agree with the trial court’s findings that EDO’s rights under the 1966 agreement have prescribed as to any sands not conveyed. We note, also, that no party here challenges a mineral conveyance on that basis. However, neither the prescriptive period established by Article 16 of the Mineral Code nor public policy prevented the creation of the 1971 mineral servitude.
Having found that there is a question of material fact as to the nature, extent, and prescription of EDO’s mineral rights in the Protective Area (the St. Martin tracts) pursuant to the 1971 conveyance, we hereby vacate the trial court’s grant of Summary Judgment, and remand for further proceedings.
VACATED AND REMANDED.
DUFRESNE, J., concurs.
DUFRESNE, J., concurring.
I respectfully concur.

. As per LSA-R.S. 31:206.

. LSA-R.S. 31:73 states: "A single mineral servitude may not be created on two or more noncontiguous tracts of land.” To constitute a single tract of land so that the exercise of the servitude will preserve the servitude as to the whole tract, it must be so situated that one may pass from one part to another without passing over the lands of another, and two sections do not constitute a single tract because the southwest point of one is the northeast point of the other. Lee v. Giauque, 154 La. 491, 97 So. 669 (1923).

.LSA-R.S. 31:63 states: A single mineral servitude is created by an act that affects a continuous body of land although individual tracts or parcels within the whole are separately described.